IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

PARKER MEYER,                          )
                                       )
                    Plaintiff,         )
                                       )        No. 2:19-cv-00640-DCN
           vs.                         )
                                       )        **ORDER**
JEFFREY ANDERSON and JEFF              )
ANDERSON & ASSOCIATES PA,              )
                                       )
                    Defendants.        )
_____)

      This matter is before the court on an issue related to Gregg Meyers's ("Meyers")
representation of plaintiff Parker Meyer ("plaintiff").[1]  For the reasons set forth below,
the court disqualifies Meyers as counsel for plaintiff.

## I.  BACKGROUND

      Defendant Jeffrey Anderson ("Anderson") and defendant Jeff Anderson &
Associates PA ("JAA") (collectively, "defendants") formed an attorney-client
relationship with plaintiff in 2014.  The amended complaint alleges that this case is about
defendants "choosing multiple ways to promote their own financial interests by actively
damaging the plaintiff's interests, each of which ways independently breached the
defendants' fiduciary and professional duties to the plaintiff."  Am. Compl. ¶ 8.
According to the complaint, in the summer of 2016, defendants took advantage of a
change in Minnesota law that allowed them to file over 800 new cases in Minnesota.  As
such, Anderson allegedly "determined unilaterally" that he would terminate his clients in

_____

[1] Given the similarity between Mr. Meyers's name and the plaintiff's name, the
court refers to the plaintiff as "plaintiff."

North and South Carolina, including plaintiff and her mother, due to JAA's increased

workload in Minnesota.  Id. ¶¶ 11–13.  Plaintiff alleges that defendants did not notify

their North and South Carolina clients about the terminations in writing, in violation of

the rules of ethics, and that Meyers, who previously worked for defendants, was only

authorized by defendants to communicate with clients about their terminations by

telephone.  Plaintiff claims that Meyers attempted to "cover" this ethical omission by

obtaining in writing an election from clients as to which lawyer they wanted be

represented by.  Id. ¶ 24.  Plaintiff was one of these clients, and she chose to be

represented by Meyers.  While never explicitly alleged, it appears that the choice of

lawyers posed to clients resulted from Meyers leaving JAA, and that clients could choose

between staying with JAA or obtaining representation from Meyers.

At this point, there was no agreement between Meyers and defendants about how

the fee would be allocated in plaintiff's cases.  Plaintiff alleges that in November 2015,

"defendants chose to advance what they imagined was their financial interest in the

potential fee from the plaintiff's cases by attacking the plaintiff's present counsel through

a means which also attacked the plaintiff."  Id. ¶ 32.  Specifically, plaintiff alleges that at

a "public hearing" on November 30, 2016, which was an unemployment hearing,

Anderson and his agent Carla Kjelberg testified under oath about "a substantial amount

of false information, known to be false when advanced," including the claim that plaintiff

had a sexual relationship with Meyers.  Id. ¶ 34–36.  The sole basis alleged for this claim

was the number of emails between plaintiff and Meyers.  Id. ¶ 39.  However, later in the

complaint, plaintiff alleges that defendants also claimed that they had two sources to

support the information about the alleged inappropriate relationship between plaintiff and

Meyers.  Id. ¶ 43.  Plaintiff claims that defendants later admitted to her that they had done no investigation into whether she actually did have a sexual relationship with Meyers.

This accusation allegedly arose yet again in March 2017 when defendants brought suit against Meyers.  The complaint alleges that defendants initially did not reference the accusation but that after a motion to dismiss had been filed, defendants "alleged publicly in writing in June 2017 that the plaintiff and Meyers had 'inappropriate boundaries.'"  Id. ¶ 48.  Therefore, plaintiff accuses defendants of falsely claiming that plaintiff and Meyers were engaged in a sexual relationship at a hearing in 2016 and again on the public record in 2017.

Moving to the allegations about plaintiff's cases in which defendants originally represented her, the complaint alleges that during the trial of plaintiff's mother's case,[2] in which plaintiff was a witness, the state actor defendants argued that plaintiff had an improper relationship with Meyers.  This was allegedly predicated on plaintiff's telephone records.  Plaintiff does not know if this accusation was based on defendants' accusation but argues that regardless, defendants' independent attack bolstered the attack by the state actor defendants.  After her mother's trial, plaintiff sought to understand defendants' alleged attack so she could prepare to deal with it at her own trials.  Plaintiff asked defendants about these accusations, and defendants denied promulgating them.  After continued questioning from plaintiff, defendants allegedly stopped responding to her.  Plaintiff alleges that as a result, she was unable to accurately assess the risk of defendants' "damaging conduct" and prepare to offset that conduct, which forced her to settle her cases for a lower amount than they were originally valued.  In plaintiff's

---

[2] Plaintiff's mother was represented at trial by Meyers.

amended complaint, she brings claims for breach of fiduciary duty, breach of assumed duty, aiding and abetting breach of fiduciary duty, professional negligence, breach of contract, and breach of contract accompanied by a fraudulent act.  ECF No. 19.

In a hearing on August 29, 2019, the court initially raised its concern about the potential for Meyers's dual role in this case as an attorney and a witness, which could violate Rule 3.7 of the South Carolina Rules of Professional Conduct.  When the court asked Meyers about this potential conflict, Meyers responded "[t]hat's why I have Mr. James [as co-counsel]."  ECF No. 33, Tr. 17:11.  The court explained that if Meyers served as a witness, then he could not also serve as a lawyer, to which Meyers responded "[w]ell, we haven't come to that point yet, Your Honor.  If we get to that point, that's why I have Mr. James.  If I'm going to be a witness, I'm going to be a very effective one." Id. 17:15–18.

The court held a status conference on this issue on May 6, 2020, during which the court gave Meyers fourteen days to decide whether to voluntarily withdraw from the case.  On May 20, 2020, Meyers informed the court that he would not withdraw.  As such, the court instructed the parties to submit briefing on whether Meyers is a necessary witness in this case.  Defendants submitted their brief on June 3, 2020, ECF No. 66, and plaintiff submitted her brief on June 4, 2020, ECF No. 67.  Defendants ask for the immediate disqualification of Meyers in their supplemental briefing; therefore, the court will treat the briefing as a motion to disqualify.

## II.  STANDARD

"A motion to disqualify counsel is subject to the Court's supervisory authority to ensure fairness in all judicial proceedings." Valizadeh v. Doe, 235 F. Supp. 3d 761, 763

(D.S.C. 2017).  The South Carolina Code of Professional Responsibility establishes the ethical standards governing the practice of law in this court.  Local Civil Rule 83.I.08 DSC, RDE Rule IV(B).

The decision to disqualify counsel is within the court's discretion.  United States v. Urutyan, 564 F.3d 679, 686 (4th Cir. 2009).  Nevertheless, "[t]he drastic nature of disqualification requires that courts avoid overly-mechanical adherence to disciplinary canons at the expense of litigants' rights freely to choose their counsel; and that they always remain mindful of the opposing possibility of misuse of disqualification motions for strategic reasons."  Shaffer v. Farm Fresh, Inc., 966 F.2d 142, 146 (4th Cir. 1992). "[T]he moving party has a high standard of proof to demonstrate that disqualification is required."  Latham v. Matthews, 2011 WL 52609, at *2 (D.S.C. Jan. 6, 2011).

### III.   DISCUSSION

Defendants argue that Meyers is a necessary witness and that he should be disqualified as counsel immediately.  Plaintiff disagrees, arguing that Meyers is not a necessary witness and that even if the court believes that he is a necessary witness, the court should exercise its discretion and delay any disqualification until trial.

Rule 3.7 of the South Carolina Rules of Professional Conduct provides:

A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

South Carolina courts have relied upon two factors in determining whether an attorney is or will be a "necessary witness": whether "the attorney's testimony is relevant to

disputed, material questions of fact" and whether "there is no other evidence available to prove those facts." Brooks v. S.C. Comm'n on Indigent Def., 797 S.E.2d 402, 405 (S.C. Ct. App. 2017). "These requirements strike 'a reasonable balance between the potential for abuse and those instances where the attorney's testimony may be truly necessary.'" Id. (quoting Smithson v. U.S. Fid. & Guar. Co., 411 S.E.2d 850, 855 (W. Va. 1991)). The potential for abuse arises from the possibility "that a party could call opposing counsel as a necessary witness, requiring his or her disqualification, purely for tactical or strategic reasons." Id.

The analysis in Brooks provides a helpful illustration of how this rule operates. In Brooks, the plaintiff-attorney filed a complaint against the South Carolina Commission on Indigent Defense ("the Commission") seeking payment of vouchers for his work on indigent defense cases. 797 S.E.2d at 404. The Commission, which suspected that the plaintiff had been overbilling on those matters, asserted defenses based on fraud, misrepresentation, and negligence, and counterclaims based on breach of contract. The plaintiff's wife, Irma, practiced law with the plaintiff and filed a notice of appearance to represent the plaintiff. The Commission then filed a motion to disqualify Irma on the grounds that she was a necessary witness and could not represent the plaintiff pursuant to Rule 3.7. The circuit court granted the motion.

The Court of Appeals of South Carolina found that the circuit court did not abuse its discretion in disqualifying Irma as an attorney based on the fact that she was a necessary witness. 797 S.E.2d at 406. The court first found that Irma's testimony was material and relevant to the issues being litigated because a portion of the overbilling was directly attributable to Irma. The court explained that Irma would occasionally appear at

hearings for the indigent defense cases at issue that had been assigned to the plaintiff and vice versa, and Irma would review the vouchers for correctness for the cases she worked on individually and together with the plaintiff.  As such, the court concluded that her testimony would be material and relevant to the Commission's defenses and counterclaims of fraud, misrepresentation, negligence, and breach of contract.

The court also concluded that Irma's testimony could not be obtained elsewhere, explaining that she was an active participant in the overbilling.  The court recognized that Irma was not the only witness to the overbilling, as at least one other employee witnessed her involvement.  But the court explained that "no other witness would be able to provide evidence regarding the full extent of Irma['s] involvement with [the plaintiff]'s overbilling."  Id.  Finally, the court concluded that the plaintiff failed to show that the Commission was attempting to disqualify Irma for any tactical or strategic reason.

With this in mind, the court will first consider whether Meyers will be a necessary witness, which would require his disqualification.  The court will then consider the timing of his disqualification.  The court concludes that Meyers will be a necessary witness and must be disqualified as plaintiff's counsel immediately.

### A.  Necessary Witness

Defendants argue that Meyers will be a necessary witness for several reasons. First, they argue that Meyers will have to testify about plaintiff's decision to settle her underlying cases, as the theory of plaintiff's case is that defendants revealed false information about her relationship with Meyers, which breached their fiduciary duties to her and forced her to settle her cases.  Defendants also argue that Meyers, as plaintiff's attorney in her underlying cases, is the only party who will be able to testify about the

legal merits, strengths, and weaknesses of plaintiff's underlying cases, all of which would be factored into any decision to settle the cases. Third, defendants contend that Meyers is the only party who will be able to testify about the value of plaintiff's underlying cases. They also argue that Meyers's testimony is necessary because he was at the unemployment hearing that gave rise to plaintiff's claim. Finally, defendants contend that Meyers is a necessary witness because plaintiff's case is based in part on the allegation that Meyers was "attacked" at the unemployment hearing, meaning Meyers will have to testify about that allegation as the subject of the purported attack. See Am. Compl. ¶ 32 ("In November 2016, [defendants] chose to advance what they imagined was their financial interest in the potential fee from the plaintiff's case by attacking the plaintiff's present counsel through a means which also attacked the plaintiff."). In response, plaintiff argues that she can testify, within the limits of privilege,[3] about all of the topics identified by defendants except those related to the unemployment hearing, and any testimony about what was said in the unemployment hearing is unnecessary because the hearing was recorded.

To summarize, there are two distinct topics here that Meyers could offer testimony on: the unemployment hearing and what went into plaintiff's decision to settle her underlying cases. As to the unemployment hearing, plaintiff reiterates that the relevance of the hearing is only that it served as notice that defendants were accusing Meyers and plaintiff of an inappropriate sexual relationship. This notice would certainly need to be established, as it is how plaintiff allegedly learned of defendants' alleged

---

[3] Plaintiff notes that the parties are in the process of discussing the limits of attorney-client privilege in this case.

breach of fiduciary duties.  However, the court fails to see how a recording of the hearing

could be used to establish that fact, as Minnesota law prohibits the use of evidence from

unemployment hearings in any civil proceeding.  See Minn. Stat. Ann. § 268.19 (Subd.

2)(c); id. § 268.105 (Subd. 5)(b).  Plaintiff argues that defendants plan to introduce into

evidence testimony from the hearing, which would waive any evidentiary objection to the

hearing's admissibility, but it is defendants who have raised the admissibility issue in the

past, suggesting that they do not plan to waive any evidentiary objections.  In addition,

defendants indicate that they need to elicit testimony from Meyers on how and why the

unemployment hearing arose and to question him about the fact that plaintiff was not the

subject of the hearing.  The recording of the hearing would not provide that background

information.

     Envisioning how the testimony on this issue would play out is useful.  When

asked how plaintiff learned that defendants made this accusation about her and Meyers,

plaintiff's response would necessarily be "Meyers told me."  That is hearsay.  In fact,

given the allegations that defendants refused to talk to plaintiff about their accusation, the

only way plaintiff could have known that defendants were allegedly spreading this

information about her was through Meyers.  Moreover, as discussed above, plaintiff

cannot provide any information about the context of the unemployment hearing because

she was uninvolved in those events.  Therefore, Meyers is the only witness who could

provide testimony on issues related to the unemployment hearing.

     The second topic on which Meyers would provide testimony, the decision to settle

plaintiff's underlying cases, is crucial to the issues of causation and damages in this case.

For example, to succeed on her breach of fiduciary duty claim, plaintiff will have to show

that defendants' allegations of the inappropriate relationship, i.e., their alleged breach of fiduciary duty, caused her to settle her underlying cases, and she will have to show that she was damaged by the breach because it forced to settle her underlying cases at a value lower than originally anticipated.  See Cantrell v. New Penn Fin., LLC, 2018 WL 4403392, at *7 (D.S.C. Sept. 17, 2018) ("To establish a claim for breach of fiduciary duty, Plaintiffs must prove: (1) the existence of a fiduciary duty, (2) a breach of that duty owed to the plaintiff by the defendant, and (3) damages proximately resulting from the wrongful conduct of the defendant."); see also Am. Compl. ¶ 84 ("As a direct and proximate cause of the conduct of [defendants], the plaintiff was compelled to compromise her [underlying cases] at a deep discount rather than run the risk of trying her [underlying cases] with the state actor defendants . . . collaborating with [defendants].").  In order to do so, evidence about the strengths and weaknesses of plaintiffs' underlying cases and the factors that went into the decision to settle are highly relevant.  For example, if the evidence showed that plaintiff had very strong cases that were highly valued and that the decision to settle at a lower value was based solely on the potential effect of defendants' false allegations, then the evidence about the strength of plaintiff's cases would be highly relevant to show that defendants' allegations caused plaintiff to settle her case.  In contrast, if the evidence showed that plaintiff's underlying cases were weak and that there were other reasons that made settlement more appealing than going to trial, then the evidence would be highly relevant to disproving causation, as the settlement would be caused or at least influenced by factors other than defendants' alleged breach of fiduciary duty.  Moreover, in order to show that plaintiff was damaged

by defendants' alleged breach, she will have to show how her cases were initially valued and then subsequently valued for settlement purposes.

Plaintiff claims that she is able to testify about these topics herself, but the court fails to see how that is so. The factors that caused plaintiff to feel forced to settle her cases and whether defendants' allegations affected the value of plaintiff's cases are based on a legal analysis that was presumably conducted by Meyers, the sole attorney who represented plaintiff in her underlying cases. Plaintiff's testimony about these topics would simply consist of her repeating the legal advice provided to her by Meyers. Returning to the examples above, plaintiff has no independent basis or knowledge nor the legal expertise to assess the legal strength of her underlying cases. She may be able to testify that her underlying cases were legally strong, but that testimony would be based on what Meyers told her. Not only would this open the door to a bevy of evidentiary issues, but it would also leave the jury wondering why plaintiff was testifying about Meyers's legal analysis of her underlying cases while Meyers was questioning her about the same. In a similar vein, if defendants attempted to cross-examine plaintiff by asking if any legal weaknesses existed in her case and how those weaknesses factored into the settlement decision in order to show that defendants' allegations did not cause her to settle her case or decrease the value of the case, plaintiff's response would be based solely on the legal analysis and information provided to her by Meyers.

In addition, the damage of being forced to settle plaintiff's underlying cases at a lower value will necessarily require testimony from Meyers. While plaintiff relies on an initial valuation that she alleges was created by defendants, it was Meyers who represented plaintiff when she settled her underlying cases for a certain amount. How the

case was ultimately valued for settlement and the impact of defendants' conduct on the settlement value is something on which Meyers would need to provide testimony.

The court struggles to imagine a scenario in which plaintiff explains her decision to settle without reference to any legal analysis. She could simply testify that she did not want to go to trial because she was concerned that the opposing party would use the information about an alleged improper relationship to harm her. But in order to explain that harm, she would have to explain why that testimony would harm her, which involves legal concepts on which plaintiff has no adequate and independent basis of knowledge to testify. She could further rely on the alleged valuation that defendants made of her cases[4] for the initial valuation and show that the amount she ultimately settled for was less than that valuation. But defendants are entitled to inquire into other aspects of her underlying cases that could have lowered the value of settlement, and those aspects would be legal in nature, i.e., the strengths or weaknesses of the merits of her case.

In light of the foregoing, the court finds that Meyers is a necessary witness in this action. The amended complaint is replete with references to "plaintiff's present counsel," i.e., Meyers, and his testimony is relevant to material facts about the causation and damages in this case. Testimony about the unemployment hearing may not be quite as crucial, but plaintiff will have to establish how she learned about defendants' allegations somehow, and she could only have learned about them by defendants' statements during the unemployment hearing. Moreover, Meyers's testimony cannot be obtained from another source, as the recording of the unemployment hearing does not provide the

---

[4] The parties dispute the nature of this valuation and whether defendants have adopted the referred-to valuation. Resolution of that dispute is not germane to the issue currently before the court.

background information that defendants need to elicit, and Meyers was the only attorney who represented plaintiff in her underlying cases.

One of the exceptions to Rule 3.7 applies when "disqualification of the lawyer would work substantial hardship on the client."  In arguing that any disqualification should be delayed, plaintiff draws the court's attention to her other attorney's medical issues.  She explains that she has another attorney, with whom Meyers associated should this precise issue arise, but that attorney is facing some serious medical issues that could affect his ability to participate in this case, especially in light of the ongoing COVID-19 pandemic.  The court interprets this argument to mean that plaintiff would suffer a substantial hardship if Meyers were disqualified because her other attorney might be unable to adequately represent her, leaving her with no attorney.  See Collins Entm't, Inc. v. White, 611 S.E.2d 262, 271 (S.C. Ct. App. 2005) (finding no substantial hardship with the disqualified attorney's law partner could take over the client's representation).

"To find 'substantial hardship,' courts have required something beyond the normal incidents of changing counsel, such as the loss of extensive knowledge of a case based upon a long-term relationship between the client and counsel and substantial discovery conducted in the actual litigation."  Brown v. Daniel, 180 F.R.D. 298, 302 (D.S.C. 1998) (citing Lumbard v. Maglia, 621 F. Supp. 1529, 1540 (S.D.N.Y. 1985)). For example, in Brown, the court applied the exception, finding that disqualifying the entire firm that represented the plaintiff would pose a substantial hardship on the plaintiff. Id.  The court explained that the case was "quite complex with a remarkable set of detailed facts and an intricate time line," and that during the eight-year span of

representing the plaintiff, the law firm "developed an intimate familiarity" with the facts of the case.  Id.

If the court were to disqualify Meyers, it appears as though plaintiff may be forced to obtain new counsel, especially if her other attorney's medical issues would affect his ability to represent her.  However, plaintiff has provided no argument or evidence that she would face a <u>substantial</u> hardship in obtaining new counsel beyond the general inconvenience of finding a new lawyer.  To be sure, Meyers has extensive knowledge of this case due to his involvement in the facts of the case, and it appears that he has a long-standing relationship with plaintiff.  But it is for those exact reasons that his disqualification is warranted.  The facts here are not particularly intricate or detailed, and the premise of the case is relatively simple.  As such, the court finds that this exception does not apply.

Finally, plaintiff argues that the court must conduct an evidentiary hearing before making any decision to disqualify Meyers, relying on <u>State v. Sanders</u>, 534 S.E.2d 696 (S.C. 2000).  In <u>Sanders</u>, the Supreme Court of South Carolina held that "an evidentiary hearing is appropriate to determine whether there is evidence to support counsel's removal."  534 S.E.2d at 698.  However, that case is inapposite because it was a criminal case, and the court was concerned with the defendant's Sixth Amendment right to counsel.  Plaintiff has no constitutional right to counsel in this civil case.  As such, the court is not obligated to hold an evidentiary hearing.

### B.  Timing of Disqualification

The next point of contention amongst the parties is when Meyers should be disqualified.  Defendants argue that Meyers should be disqualified immediately.  They

explain that he has known since the beginning of this case that he could be a witness, and that his taking and defending of depositions would cause juror confusion if the depositions are used at trial. Moreover, defendants note that it has been unclear in various submissions to the court and in communications with JAA whether Meyers has been acting as counsel or a witness. The example provided by defendants is references to the unemployment hearing. Defendants explain that it's not clear whether Meyers's references to the hearing are based on his recollection as a witness or if he is simply commenting on evidence as a lawyer.

In response, plaintiff agrees that the court could disqualify Meyers now but that the court should not exercise its discretion to do so now. However, the court fails to see how it could decide that an attorney must be disqualified and then allow that same attorney to continue litigating the case. As indicated by the case law cited in the court's previous order, Rule 3.7 does not apply just at trial and can warrant disqualification prior to trial. As such, the court disqualifies Meyers immediately.[5]

---

[5] The court will give plaintiff time to decide if she wants to continue to be represented by Mr. James or another lawyer or for Mr. James, if he wishes to do so, to associate another lawyer to assist him in the preparation and trial of plaintiff's case.

15

## IV.   CONCLUSION

For the foregoing reasons, the court disqualifies Meyers as plaintiff's counsel.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**August 3, 2020
Charleston, South Carolina**