**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| PARKER MEYER,                )<br>                              )<br>            Plaintiff,      )<br>                              )     No. 2:19-cv-00640-DCN<br>        vs.                   )<br>                              )     **ORDER**<br>JEFFREY ANDERSON and JEFF     )<br>ANDERSON & ASSOCIATES PA,    )<br>                              )<br>            Defendants.       )<br>_____) | |

This matter is before the court on defendant Jeffrey Anderson ("Anderson") and Jeff Anderson & Associates PA's ("JAA") (collectively, "defendants") motion to compel, ECF No. 68. For the reasons set forth below, the court grants in part and denies in part the motion.

## I.  BACKGROUND

Defendants formed an attorney-client relationship with plaintiff Parker Meyer ("plaintiff") in 2014. The amended complaint alleges that this case is about defendants "choosing multiple ways to promote their own financial interests by actively damaging the plaintiff's interests, each of which ways independently breached the defendants' fiduciary and professional duties to the plaintiff." Am. Compl. ¶ 8. According to the complaint, in the summer of 2016, defendants took advantage of a change in Minnesota law that allowed them to file over 800 new cases in Minnesota. As such, Anderson allegedly "determined unilaterally" that he would terminate his clients in North and South Carolina, including plaintiff and her mother, due to JAA's increased workload in Minnesota. Id. ¶¶ 11–13. Plaintiff alleges that defendants did not notify their North and

1

South Carolina clients about the terminations in writing, in violation of the rules of ethics, and that plaintiff's current counsel, Gregg Meyers ("Meyers"), who previously worked for defendants, was only authorized by defendants to communicate with clients about their terminations by telephone.  Plaintiff claims that Meyers attempted to "cover" this ethical omission by obtaining in writing an election from clients as to which lawyer they wanted be represented by.  Id. ¶ 24.  Plaintiff was one of these clients, and she chose to be represented by Meyers.  While never explicitly alleged, it appears that the choice of lawyers posed to clients resulted from Meyers leaving JAA, and that clients could choose between staying with JAA or obtaining representation from Meyers.

At this point, there was no agreement between Meyers and defendants about how the fee would be allocated in plaintiff's cases.  Plaintiff alleges that in November 2015, "defendants chose to advance what they imagined was their financial interest in the potential fee from the plaintiff's cases by attacking the plaintiff's present counsel through a means which also attacked the plaintiff."  Id. ¶ 32.  Specifically, plaintiff alleges that at a "public hearing" on November 30, 2016, which was an unemployment hearing, Anderson and his agent Carla Kjelberg testified under oath about "a substantial amount of false information, known to be false when advanced," including the claim that plaintiff had a sexual relationship with Meyers.  Id. ¶ 34–36.  The sole basis alleged for this claim was the number of emails between plaintiff and Meyers.  Id. ¶ 39.  However, later in the complaint, plaintiff alleges that defendants also claimed that they had two sources to support the information about the alleged inappropriate relationship between plaintiff and Meyers.  Id. ¶ 43.  Plaintiff claims that defendants later admitted to her that they had done no investigation into whether she actually did have a sexual relationship with Meyers.

This accusation allegedly arose yet again in March 2017 when defendants brought suit against Meyers. The complaint alleges that defendants initially did not reference the accusation but that after a motion to dismiss had been filed, defendants "alleged publicly in writing in June 2017 that the plaintiff and Meyers had 'inappropriate boundaries.'" Id. ¶ 48. Therefore, plaintiff accuses defendants of falsely claiming that plaintiff and Meyers were engaged in a sexual relationship at a hearing in 2016 and again on the public record in 2017.

Moving to the allegations about plaintiff's cases in which defendants originally represented her, the complaint alleges that during the trial of plaintiff's mother's case,[1] in which plaintiff was a witness, the state actor defendants argued that plaintiff had an improper relationship with Meyers. This was allegedly predicated on plaintiff's telephone records. Plaintiff does not know if this accusation was based on defendants' accusation but argues that regardless, defendants' independent attack bolstered the attack by the state actor defendants. After her mother's trial, plaintiff sought to understand defendants' alleged attack so she could prepare to deal with it at her own trials. Plaintiff asked defendants about these accusations, and defendants denied promulgating them. After continued questioning from plaintiff, defendants allegedly stopped responding to her. Plaintiff alleges that as a result, she was unable to accurately assess the risk of defendants' "damaging conduct" and prepare to offset that conduct, which forced her to settle her cases for a lower amount than they were originally valued. In plaintiff's amended complaint, she brings claims for breach of fiduciary duty, breach of assumed

---

[1] Plaintiff's mother was represented at trial by Meyers.

duty, aiding and abetting breach of fiduciary duty, professional negligence, breach of contract, and breach of contract accompanied by a fraudulent act.  ECF No. 19.

Defendants filed their motion to compel on June 29, 2020.  ECF No. 68.  Plaintiff responded on July 20, 2020, ECF No. 73, and the time for defendants to file a reply brief has passed.  Therefore, the motion is ripe for review.

## II.  STANDARD

Pretrial discovery is governed by Rule 26 of the Federal Rules of Civil Procedure. Parties are permitted to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  In determining proportionality, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Id.  When a party fails to respond to a discovery request or responds in an incomplete manner, the party seeking discovery may file a motion to compel discovery responses.  Fed. R. Civ. P. 37(a)(3)(B); Fed. R. Civ. P. 37(a)(4).

## III.  DISCUSSION

Defendants ask the court to compel the production of all documents responsive to defendants' second set of requests for production that plaintiff has withheld as attorney-client privileged.  Defendants requested "the case file for the Plaintiff's underlying cases."  ECF No. 68-1 at 7.  In response, plaintiff produced some documents but stated that "[c]orrespondence with the client was excluded from production on the basis of

4

attorney-client privilege." ECF No. 68-2 at 3. Defendants argue that plaintiff has waived any attorney-client privilege related to her underlying cases by bringing this action because she put the privileged information at issue.

In response, plaintiff argues that reliance on the pleadings alone is insufficient to find that she waived attorney-client privilege. In support of this position, plaintiff relies solely upon In re Mt. Hawley Ins. Co., in which the Supreme Court of South Carolina held that "a denial of bad faith and/or the assertion of good faith in the answer" filed in an insurance bad faith action "does not, standing alone, place a privileged communication 'at issue' in a case such that the attorney-client privilege is waived." 829 S.E.2d 707, 718 (S.C. 2019). The problem with plaintiff's reliance on this case is that the case's holding specifically applies in insurance bad faith actions. Indeed, the Supreme Court of South Carolina noted that it had "not previously been tasked with harmonizing attorney-client privilege and insurance bad faith law" and then proceeded to do just that. Id. at 714 (emphasis added). The court contemplated the fact that "[i]nsurance bad faith actions necessarily bring into conflict the competing policy considerations of protecting the attorney-client privilege and promoting broad discovery to facilitate the truth-seeking function of our justice system" and found that the approached adopted by the court "accounts for and fairly distributes the risks and benefits of the various competing public policies." Id. at 717–18. As such, it is abundantly clear that the discussion and holding in In re Mt. Hawley Ins. Co. applies specifically to bad faith insurance actions. This case is not a bad faith insurance action, making In re Mt. Hawley Ins. Co. inapplicable here.

Instead, the question before the court is the broader question of whether plaintiff has implicitly waived her attorney-client privilege with Meyers in her underlying cases

by virtue of bringing this lawsuit.  "The attorney-client privilege belongs solely to the client and can only be waived by the client." State v. Thompson, 495 S.E.2d 437, 439 (S.C. 1998).  In order for a client to waive attorney-client privilege, "the waiver must be distinct and unequivocal." State v. Hitopoulus, 309 S.E.2d 747, 749 (S.C. 1983).  "Under South Carolina law, a party may implicitly waive a privilege by placing a privileged communication 'at issue' in a case." Berchtold Corp. v. Faegre Baker Daniels, LLP, 2014 WL 12609704, at *2 (D.S.C. Dec. 3, 2014) (quotations and citations omitted).  "A waiver of the privilege 'occurs when the party puts "at issue" some fact which necessarily involves an examination of the attorney's advice or communication to the client.'" Id. (quoting United States v. White, 944 F. Supp. 2d 454, 459 (D.S.C. 2013)).  "The 'at issue' doctrine is based on notions of fairness and truth-seeking." White, 944 F. Supp. 2d at 459.  "[A] party waives the attorney-client privilege if '(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue making it relevant to the case: and (3) application of the privilege would have denied the opposing party access to information vital to his defense.'" Berchtold Corp., 2014 WL 12609704, at *2 (quoting White, 944 F. Supp. at 459).

Here, plaintiff has alleged that defendants' actions forced her to settle her underlying cases for less than they were worth.  Am. Compl. ¶ 84 ("As a direct and proximate result of the conduct of the Anderson defendants, the plaintiff was compelled to mitigate the injuries the Anderson defendants caused her interests, and to compromise her S.C. cases at a deep discount rather than run the risk of trying her S.C. cases with the state actor defendants in her existing cases collaborating with the Anderson

defendants."). By doing so, she has put at issue her decision to settle her case, which "necessarily involves an examination of" Meyers's communication to plaintiff on that issue. Berchtold Corp., 2014 WL 12609704, at *2. Indeed, based on her response brief, plaintiff does not seem to dispute that she has put this topic at issue and instead argues that her amended complaint alone is insufficient to waive attorney-client privilege. As discussed above, that argument is unique to insurance bad faith actions and does not apply here. Moreover, applying privilege would deny defendants "access to information vital to [their] defense," such as exploration of why plaintiff settled her underlying cases, whether defendants' alleged breach of fiduciary duty was the proximate cause of plaintiff's decision to settle, and whether that alleged breach injured plaintiff by forcing her to settle for less than her cases were worth.

However, defendants requested the entirety of case files for plaintiffs' underlying cases, which may also contain communications between Meyers and plaintiff that are not necessary to prove or disprove plaintiff's allegations, such as general litigation strategy. Therefore, the court grants defendants' motion as to any communication between Meyers and plaintiff that relates to plaintiff's decision to settle her underlying cases and the valuation of her cases but denies the motion as to any communications that have no bearing on these issues.

## IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS IN PART** and **DENIES IN PART** the motion.

**AND IT IS SO ORDERED.**

_____
DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**August 31, 2020**
**Charleston, South Carolina**