# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| PARKER MEYER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:19-cv-00640-DCN |
| vs. ) | |
| ) | **ORDER** |
| JEFFREY ANDERSON and JEFF ) | |
| ANDERSON & ASSOCIATES, P.A., ) | |
| ) | |
| Defendants. ) | |
| ) | |

The following matter is before the court on defendants Jeffrey Anderson's ("Anderson") and Jeff Anderson & Associates, P.A.'s ("JAA") (collectively, "defendants") motion to compel, ECF No. 89. For the reasons set forth below, the court grants in part and denies in part the motion.

## I. BACKGROUND

This action arises from plaintiff Parker Meyer's ("plaintiff") allegations that JAA breached its fiduciary duties to her by negatively affecting the settlement value of her civil lawsuits in South Carolina. Plaintiff engaged defendants in 2014 to provide legal services regarding certain matters in various South Carolina courts (the "Underlying Cases").[1] The amended complaint, now the operative complaint, alleges that this case is about defendants "choosing multiple ways to promote their own financial interests by actively damaging the plaintiff's interests, each of which ways independently breached the defendants' fiduciary and professional duties to the plaintiff." ECF No. 19, Am.

---

[1] The subject matters of the Underlying Cases are not alleged in this action and, in any event, are immaterial to the motion before the court.

1

Compl. ¶ 8. According to the complaint, in the summer of 2016, defendants took advantage of a change in Minnesota law that allowed them to file over 800 new cases in Minnesota. As such, Anderson allegedly "determined unilaterally" that he would terminate his clients in North and South Carolina, including plaintiff and her mother, due to JAA's increased workload in Minnesota. Id. ¶¶ 11–13. Plaintiff alleges that defendants, in violation of the rules of ethics, did not notify their North and South Carolina clients about the terminations in writing and that Gregg Meyers ("Meyers"), who previously worked for defendants, was only authorized by defendants to communicate with clients about their terminations by telephone. Plaintiff claims that Meyers attempted to "cover" this ethical omission by obtaining in writing an election from clients as to which lawyer they wanted to continue their representation with. Id. ¶ 24. Plaintiff was one of these clients, and she chose to be represented by Meyers in her Underlying Cases. While never explicitly alleged, it appears that the choice of lawyers posed to clients resulted from Meyers leaving JAA, and that clients could choose between staying with JAA or obtaining representation from Meyers. At this point, there was no agreement between Meyers and defendants about how the fees would be allocated in plaintiff's cases. Plaintiff alleges that in November 2015, "defendants chose to advance what they imagined was their financial interest in the potential fee from the plaintiff's cases by attacking [Meyers] through a means which also attacked the plaintiff." Id. ¶ 32. Specifically, plaintiff alleges that at a "public hearing" on November 30, 2016, which was an unemployment hearing, Anderson and his agent Carla Kjelberg testified under oath about "a substantial amount of false information, known to be false when advanced," including the claim that plaintiff had a sexual relationship with Meyers. Id.

¶ 34–36.  The sole basis alleged for this claim was the number of emails between plaintiff and Meyers.  Id. ¶ 39.  However, later in the complaint, plaintiff alleges that defendants also claimed that they had two sources to support the information about the alleged inappropriate relationship between plaintiff and Meyers.  Id. ¶ 43.  Plaintiff claims that defendants later admitted to her that they had done no investigation into whether she actually had a sexual relationship with Meyers.

This accusation allegedly arose yet again in March 2017 when defendants brought suit against Meyers.  The complaint alleges that defendants initially did not reference the accusation but that after a motion to dismiss had been filed, defendants "alleged publicly in writing in June 2017 that the plaintiff and Meyers had 'inappropriate boundaries.'"  Id. ¶ 48.  Therefore, plaintiff accuses defendants of falsely claiming that plaintiff and Meyers were engaged in a sexual relationship at a hearing in 2016 and again on the public record in 2017.  The complaint alleges that during the trial of plaintiff's mother's case,[2] in which plaintiff was a witness, the state actor defendants argued that plaintiff had an improper relationship with Meyers.  The state actor defendants' arguments about the relationship were allegedly predicated on plaintiff's telephone records.  Plaintiff does not know if this accusation was based on defendants' accusation but argues that regardless, defendants' independent attack bolstered the attack by the state actor defendants.  After her mother's trial, plaintiff sought to understand defendants' alleged attack so she could prepare to deal with it at her own trial in the Underlying Cases.  Plaintiff asked defendants about these accusations, and defendants denied promulgating them.  After continued questioning from plaintiff, defendants allegedly stopped responding to her.  Plaintiff alleges that as a

---

[2] Plaintiff's mother was represented at trial by Meyers.

result, she was unable to accurately assess the risk of defendants' "damaging conduct" and prepare to offset that conduct, which forced her to settle her Underlying Cases for a lower amount than they were originally valued. Id. ¶ 48. In plaintiff's amended complaint, she brings claims for breach of fiduciary duty, breach of assumed duty, aiding and abetting breach of fiduciary duty, professional negligence, breach of contract, and breach of contract accompanied by a fraudulent act. ECF No. 19.

On August 13, 2020, the court granted a motion to compel filed by defendants and ordered plaintiff to produce "any communication between Meyers and plaintiff that relates to plaintiff's decision to settle her [U]nderlying [C]ases and the valuation of her cases" (the "August 2020 Order"). ECF No. 78. Defendants contend that plaintiff has not produced any responsive documents and that she claimed in the meet and confer process that no such documents existed. Seeking to formalize plaintiff's alleged assertion, defendants served on plaintiff its first set of requests for admission. ECF No. 89-2. Plaintiff served her responses on July 7, 2021. ECF No. 89-3. After defendants sent plaintiff a letter highlighting purported deficiencies in plaintiff's answers, plaintiff served amended responses on August 10, 2021. ECF No. 89-7. Defendants maintain that the amended responses fail to cure any of the complained-of deficiencies.

On August 18, 2021, defendants filed a motion to compel responses to their requests for admission. ECF No. 89. On September 1, 2021, plaintiff responded in opposition. ECF No. 94. Defendants did not file a reply, and the time to do so has now expired. The court held a hearing on the motion on October 7, 2021. ECF No. 96. As such, this motion is now ripe for the court's review.

## II.  STANDARD

Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order,

> [p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  Notably, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."  Id.  "The scope and conduct of discovery are within the sound discretion of the district court."  Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Rsch., Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988)); see also U.S. ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (stating that district courts are afforded "substantial discretion . . . in managing discovery").

A party who requested admissions "may move to determine the sufficiency of the answers or objections."  Fed. R. Civ. P. 36(a).  Moreover, if a party declines to comply with a discovery request, the serving party "may move for an order compelling an answer, designation, production, or inspection."  Fed. R. Civ. P. 37(a)(3)(B).  An evasive or incomplete disclosure, answer, or response "must be treated as a failure to disclose, answer or respond."  Fed. R. Civ. P. 37(a)(4).  District courts have "wide latitude in controlling discovery and [their] rulings will not be overturned absent a showing of clear abuse of discretion."  Ardrey v. United Parcel Serv., 798 F.2d 679, 683 (4th Cir. 1986);

In re MI Windows & Doors, Inc. Prod. Liab. Litig., 2013 WL 268206, at *1 (D.S.C. Jan. 24, 2013).

### III.  DISCUSSION

Defendants move the court for "an Order requiring Plaintiff to provide proper answers to the Requests for Admission or, in the alternative, striking Plaintiffs' evasive answers and deeming the requests admitted."  ECF No. 89 at 4.  Specifically, defendants challenge plaintiff's responses to Request for Admission Nos. 6, 7, 9, 11, and 12.  Defendants' motion discusses related requests together, and, for ease of discussion, the court does so as well.

**A.  Request for Admission Nos. 6. and 7**

Request for Admission No. 6 asks plaintiff to admit that "Plaintiff has no documents regarding the valuation of her Underlying Cases before claiming JAA allegedly lowered the value of her Underlying Cases."  ECF No. 89-2 at 2 (emphasis added).  Request for Admission No. 7 relatedly asks plaintiff to admit that "Plaintiff has no documents regarding the valuation of her Underlying Cases after claiming JAA allegedly lowered the value of her Underlying Cases."  Id. (emphasis added).

Plaintiff's amended response as to Request for Admission No. 6 states:

> Plaintiff admits so much of Defendants' Request number 6 which comports with Defense counsel's interpretation of the words "valuation" and "regarding" as described in his letters and emails subsequent to Plaintiff's Initial Responses, in as much as Plaintiff does not currently possess documents that use the word "valuation" in its substance; however, Plaintiff denies so much of this request as she has identified to Defense counsel emails from her to Defendant JAA and from JAA to her (previously produced) and Plaintiff has further referenced Defendant JAA's subsequent silence as confirmation of certain assumptions regarding Defendant JAA's actions as responsive to this request and further has produced a recording of a Minnesota Unemployment Hearing in which Defendant JAA and an

6

>> employee of JAA specifically discussed the "value" of Plaintiff's underlying cases.

ECF No. 89-7 at 3. As to Request for Admission No. 7, plaintiff states in her amended response:

> See Response to number 6 above (admitting in part and denying in part) as it is the same Response except it would be difficult to quantify which was before or after the statements by Defendant JAA which lowered the value of her cases, since they were essentially contemporaneous concerning the statements made at the above referenced Minnesota Hearing, although the Plaintiff did not receive the recording until afterwards and the above referenced emails between Plaintiff and Defendant JAA were afterwards.

Id.

Defendants argue that these responses are "nonsensical" and that plaintiff must either admit that she does not have documents that relate to the valuation of her Underlying Cases or produce the documents. Defendants argue that the responses are inconsistent with plaintiff's counsel's previous assertion when asked for similar documents. By way of background, defendants previously requested "the case file for the Plaintiff's underlying cases." ECF No. 68-1 at 7. Plaintiff produced some responsive documents but excluded from her production correspondence between her and Meyers—her counsel in the Underlying Cases—that she argued was covered by attorney-client privilege. In its August 2020 Order, the court found that plaintiff waived her attorney-client privilege with Meyers by alleging in this action that defendants' actions forced her to settle her Underlying Cases for less than they were worth. Therefore, the court ordered plaintiff to produce communications between Meyers and plaintiff related to "plaintiff's decision to settle her underlying cases and the valuation of her cases." ECF No. 78 at 7. Subsequently, defendants sent an email requesting documents responsive to the court's August 2020 Order, and plaintiff's counsel responded, "I understand what you are

looking for but that document does not exist." ECF No. 89-1. Defendants maintain this email response from plaintiff's counsel is at odds with plaintiff's denial of Request to Admit Nos. 6 and 7.

Defendants additionally argue that plaintiff's responses to these two requests for admission are evasive in three respects. First, the correspondence between plaintiff and JAA "do not reference, relate to, or regard valuation by any stretch of the imagination." ECF No. 89 at 6. Second, defendants contend that plaintiff's admission that she has no documents that use the actual word "valuation" is "evasive and disingenuous." Id. And third, defendants argue that plaintiff's attempt to use "silence" as a means to dispute that no documents exist is illogical, as silence is not a document. Id.

In her response to the motion to compel, plaintiff stands by her amended responses to the requests for admission. First, plaintiff explains that her denial of these requests for admission is consistent with her counsel's prior statements that she had no documents responsive to the court's order. Specifically, plaintiff explains that her counsel's prior statements only confirmed that there were no writings about valuation between plaintiff and Meyers. Plaintiff argues that the fact that there are no writings between the plaintiff and Meyers regarding valuation is not inconsistent with the existence of writings from other sources that refer to valuation—such as between plaintiff and JAA. The court agrees in this respect and does not consider plaintiff's amended responses to Request for Admission Nos. 6 and 7 incompatible with plaintiff's position regarding the non-existence of documents responsive to the court's August 2020 Order, which was limited to communications between plaintiff and Meyers.

Second, plaintiff maintains that her email from December 17, 2017 to Anderson, produced at bates number "JAA_000001," relates to valuation. ECF No. 93 at 8. During the hearing, plaintiff's counsel also confirmed that, in plaintiff's view, emails between her and JAA from December 7, 15, and 19 of 2017, produced at bates numbers "JAA_000001" through "JAA_000006," all relate to valuation. ECF No. 93 at 8–13. The court agrees that these emails sufficiently relate to the valuation of her Underlying Cases. For example, the text of plaintiff's December 17, 2017 email to Anderson is as follows:

> Mr. Anderson,
> Firstly, I am Ms. Meyer to you. Secondly, I refuse to refer to you as Mr. Jeff. Thirdly, <u>I am trying to get the answers to my questions so that I can beat back the damage done by these unfair allegations</u>. Are you telling me that I need an attorney to get my attorney, who originated the allegations against me, to tell me the source of and substance behind <u>the damaging averments</u>? My hope is to NOT engage another attorney. I have had my fair share these past 4 years and am up to my ears in lawyers. I would like all of you out of my life as soon as I can arrange it. I have a spotless record and am kind and giving and have enjoyed quite a lot of accolades and successes in my life. <u>Opposing counsel has been furiously wanting for me to have any stain on my character and you and Carla have handed them a smear on a platter!</u> Until several issues are resolved and I am satisfied that you are not untruthful to me, I have to know how you came to act against my interest. I do not want to get to the bottom of this through subpoena power. I have already subpoenaed sufficient phone records. I am hoping to get answers and to find a way to right this problem that I did not create. <u>You have complicated my claims. I am trying to overcome the damage you have caused.</u> I need a truthful, complete, and a substantive response to do so, and I need it promptly.

<u>Id.</u> (emphasis added). In this email, plaintiff specifically stated that defendants' actions "damage[d]" and "complicated" her claims in the Underlying Actions. Defendants may disagree as to whether this email is ultimately probative of any reduction in value of her Underlying Cases as a result of their actions; however, the email, on its face, is a "document[] regarding the valuation" of her Underlying Cases, meaning that plaintiff's

9

denial of the requests to admit that she possesses no such documents and that no such documents exist was proper on this basis. While defendants could have framed their requests for admission differently such that this communication would not have served as a basis for denial, plaintiff's mention of this communication in her denial was proper based on how the requests were worded. Nevertheless, to the extent plaintiff denies the requests for admission on the basis of defendants' silence in response to plaintiff's emails, such denial is improper. Silence is undoubtedly not a document, and defendants' request to admit only relates to plaintiff's possession or the existence of <u>documents</u> regarding valuation—not all evidence. Therefore, the court strikes any reference to defendants' silence as a basis for denial of Request for Admission Nos. 6 and 7.

Notably, plaintiff does not specifically address defendants' challenge to her partial admission that she has no documents that use the actual word "valuation." <u>Id.</u> However, when viewed in connection with plaintiff's identification of the email communications between her and JAA relating to the valuation of the Underlying Cases, the court does not find this partial admission problematic. The admission simply clarifies that, notwithstanding plaintiff's denial of the request based on the identified emails, plaintiff has not identified any documents that use the word "valuation."

Third, plaintiff argues that she properly denied the requests to admit that she has no documents regarding valuation of her claims because she has produced the recording of the Minnesota unemployment hearing at issue. Plaintiff explains that defendants' second set of requests for production requested that she "furnish all documents (including ESI) or things (including Electronic Media)" responsive to the production requests. ECF No. 68 at 3–4. Based on these instructions, plaintiff provided the recordings of the

10

Minnesota unemployment hearing in response to requests that plaintiff produce her "case files" for her Underlying Cases and for "documents or communications related to Plaintiff's settlement of her underlying cases." Id. at 7.  The court does not agree with plaintiff that the recording is a "document[] regarding valuation" rendering denial of the requests to admit appropriate.  In other words, just because the recording was responsive to production requests does not mean that it is responsive to defendants' requests for admission.  The requests for admission only asked whether plaintiff possessed any <u>documents</u> regarding valuation or whether such documents existed—it did not extend to "things" such as electronic media.   During the hearing, the parties confirmed that plaintiff only produced the recording of the hearing; not the transcript.  A recording is not a document, and defendants' requests for production or requests for admission never defined the term "document" as such.  The recording was only responsive to defendants' production request because it asked for all "communications" related to settlement of plaintiff's underlying cases, which, pursuant to defendants' instructions, included communications in the form of both documents and "things," such as electronic media. Defendants' Request for Admission Nos. 6 and 7 did not extend as far as their requests for production.  Therefore, the court finds plaintiff's denial of the request on this basis improper and strikes any portion of plaintiff's denial of Request for Admission Nos. 6 and 7 relying on these recordings.

### B.   Request for Admission No. 9

Defendants Request for Admission No. 9 states:

> If a motion in limine to exclude any reference to Plaintiff's relationship with Gregg Meyers was granted in the Underlying Cases, there could not be any devaluation in the value of the Underlying Cases due to any disparaging statements that JAA allegedly made.

11

ECF No. 89-2 at 2. In her amended response, plaintiff admits in part and denies in part the request:

> Plaintiff admits that no motion was filed, but denies the remainder of request number 9 because there was no "relationship" as the Request presumes, other than the attorney-client relationship. The request also fails to take into account the communication Mr. Anderson made by his silence in response to Ms. Meyer's objection to his (undisputedly) lying to her: that he had been collaborating with those adverse to Ms. Meyer. To file a motion in limine about the contention might have limited its mention at trial (of course, it is pure speculation as there is no way to know how the judge would have ruled), assuming those who had demonstrated a willingness to defy court directions in the past complied with court rulings this time, or, more likely, the Court would have simply deferred the issue until it was mentioned at trial and a mistrial was required, a process which could have been repeated over and over. But even a trial with no mention of the issue does not limit the damage of the collaboration that the Plaintiff's former lawyer had undertaken with those adverse to her, any more than trying to do discovery about Defendant Anderson's duplicity towards his own former client could have eliminated that damage. The point was that once he was caught lying he chose to stay silent, implying that he could not truthfully answer her questions, because he had, in fact, already been collaborating with adverse parties. An evidentiary motion could not solve the problem of a lawyer who had lost track of his ethical obligations and had begun to collaborate with persons adverse to his former client. He sent her into the mediation with the reasonable belief he had turned on her - that is what his silence inferred, and reasonably so. Had he not done so, he would have answered her questions. Ms. Meyer's concern that Defendant JAA had turned on her was reasonable, was confirmed by her counsel's own experience, and could have come out in many ways at trial, despite any pre-trial motions.

ECF No 89-7 at 4.

During the hearing, counsel for defendants withdrew the motion to compel as to this request for admission. Therefore, the court finds the motion moot as to Request for Admission No. 9.

### C. Request for Admission Nos. 11 and 12

Request for Admission No. 11 asks plaintiff to admit that she "has no documents evidencing any communications that JAA had with the defense counsel in her Underlying

12

Cases." ECF No. 89-2 at 2. Request for Admission No. 12 similarly asks plaintiff to admit that no such documents exist. In her amended response, plaintiff states:

> Plaintiff admits that she does not have currently in her possession documents that evidence a direct contact between Defendant Anderson and the defense counsel in her underlying cases, but there are documents which tend to show that at the very least, he may have had indirect communication and his previously referenced contact and refusal to answer Plaintiff's questions implies a direct communication. The documents which we have are the communications between Ms. Meyer and Mr. Anderson, and particularly his silence after she caught him in a lie. The totality of the Mr. Anderson's actions, plus his silence, implies the communications between Mr. Anderson and those adverse to Ms. Meyer, including defense counsel. As does the timing of the claim, which was not made until after Mr. Anderson elected to advance his theory. When Ms. Meyer caught Mr. Anderson lying to her, explained he had damaged her and she was trying to mitigate that damage, his response should have been to tell her the truth. That he stayed silent confirmed her worst fears: that in his disregard of his responsibilities towards her and for reasons of his own he had chosen to collaborate with parties adverse to her. Otherwise, he would have given her the truthful answers she was entitled to instead of lying to her and then refusing to communicate with her by going silent. Additionally, Defendant JAA filed public pleadings and documents in 2017 which could very well have been and [sic] indirect communication with defense counsel in Plaintiff's underlying cases.

ECF No. 89-7 at 5–6. As to whether any documents exist, plaintiff's amended response states:

> Please see 11 above for a more complete response, however, while Plaintiff admits that she does not have currently in her possession documents that evidence a direct contact between Defendant Anderson and the defense counsel in her underlying cases, she cannot state categorically that such documents do not exist until more discovery is done. In addition to the documents referenced in number 11 above, Plaintiff believes that phone records exist that will evidence communications either directly or indirectly between Defendant JAA and parties adverse to the Plaintiff.

Id. at 6.

Defendants complain that plaintiff's amended responses do not address the question posed by the requests for admission. Specifically, the requests seek an

13

admission that documents evidencing communications between JAA and <u>defense counsel</u> in the Underlying Cases are not in plaintiff's possession and do not exist. According to defendants, plaintiff improperly denies the requests by claiming that: (1) communications between JAA and <u>plaintiff</u> evince communications between JAA and underlying defense counsel; and (2) the lack of communications with plaintiff evinces communications between JAA and underlying defense counsel. Defendants argue that such a denial is illogical, as a communication between two parties cannot evidence a communication with a third party that is not even referenced in the communication.

    Plaintiff again submits that her denials of these two requests were proper. She explains that she "admitted that she did not currently have in her possession documents that evidence a direct contact between Defendant Anderson and the defense counsel in her Underlying Cases, and then went on to fully explain what other communications there were and her interpretation of them." ECF No. 94 at 12. These other communications include "the defendants' public filing in 2017" and defendants' "silence after she challenged them lying to her." <u>Id.</u> The court finds two flaws in plaintiff's argument. First, as already explained, silence is not a document, and therefore defendants' silence in response to plaintiff's emails is not a proper basis for plaintiff's denial of the requests to admit. Second, neither of these "other communications" "evidenc[es] any communications that JAA had with the defense counsel in her Underlying Cases." ECF No. 89-2 at 2. At best, plaintiff is arguing that defendants' 2017 public filing and their failure to respond to plaintiff's emails suggest an "indirect communication" with defense counsel in the Underlying Cases. ECF No. 89-7 at 5–6. This argument strains credulity and does not fairly respond to the request. Under Federal Rule of Civil Procedure

36(a)(4), "[a] denial must fairly respond to the substance of the matter" addressed in the request for admission. Plaintiff's denial fails to do so. Moreover, under Federal Rule of Civil Procedure 37(a)(4), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." And "[i]f a party's answers are evasive or fail to respond to the substance of the question, and the evidence establishes that the request should have been admitted, the court may deem the matter admitted." Auto-Owners' Ins. Co. v. Gordon & Assocs., Inc., 2016 WL 11509964, at *3 (D.S.C. June 2, 2016) (internal citations and quotations omitted). The court finds the denial of Request to Admit No. 11 evasive and accordingly deems plaintiff to have admitted that request.

During the hearing, counsel for plaintiff further argued that plaintiff cannot admit Request for Admission No. 12—that no documents exist that evidence any communications that JAA had with the defense counsel in her Underlying Cases—because plaintiff has not had the opportunity to conduct any depositions or otherwise complete discovery. The court agrees that while plaintiff can admit that she possesses no such document, she cannot—at least at this stage—admit that no documents exist anywhere in the universe. Plaintiff complains in her response in opposition to the motion to compel that "defendants have thus far refused to allow the plaintiff to take the defendants' depositions." ECF No. 94 at 12. Plaintiff explains that "[e]very time [a deposition] is noticed another motion is filed and defendants claim [the parties] have to wait until those are heard before [they] can do any additional discovery." Id. Therefore, the court orders that the parties submit a schedule of depositions to the court within thirty

days of this order.  For now, the motion to compel as to Request for Admission No. 12 is premature, and the court denies the motion without prejudice as to this request.

Defendants additionally request attorney's fees and costs related to filing the instant motion.  On finding that an answer to a request for admission does not comply with Rule 36, Rule 37(a)(5) applies to an award of expenses.  Fed. R. Civ. P. 36(a)(6).  When a court grants in part and denies in part a motion brought under Rule 36, as the court has done here, Rule 37(a)(5)(C) in particular applies.  Under that rule, "If the motion is granted in part and denied in part, the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."  Fed. R. Civ. P. 37(a)(5)(C).  Notably, attorney's fees are not available under Rule 37(a)(5)(C).  See United Prop. & Cas. Ins. v. Couture, 2020 WL 3402396, at *3 (D.S.C. June 19, 2020) (finding that when a court grants in part and denies in part a motion to compel, "attorney's fees are not awardable under Rule 37(a)(5)(C)"); EEOC v. Bardon, Inc., 2010 WL 989051, at *3 (D. Md. Mar. 12, 2010) ("Because the term 'attorney's fees' is explicit in subsections (A) and (B) but not in (C), the Court must presume that attorney's fees are not permissible 'expenses' under subsection (C). The plain reading of the statute mandates this result."); Raynor v. G4S Secure Sols. (USA) Inc., 327 F. Supp. 3d 925, 950 (W.D.N.C. 2018), aff'd, 805 Fed. App'x 170 (4th Cir. 2020) (differentiating and distinguishing between attorney's fees under Rule 35(a)(5)(A) and expenses under Rule 35(a)(5)(C) because "the plain language of Rule 37(a)(5)[(C)] only permits an award of 'reasonable expenses'").  While an award of other expenses incurred in connection with the motion is available under Rule 35(a)(5)(C), such an award is not mandatory.  The

16

court does not find that an award of defendants' expenses is appropriate under the circumstances and, in its discretion, declines to award the same.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART AND DENIES IN PART** the motion to compel and orders the parties to submit a deposition schedule within thirty days.

**AND IT IS SO ORDERED.**

                              **DAVID C. NORTON**
                              **UNITED STATES DISTRICT JUDGE**

**October 12, 2021**
**Charleston, South Carolina**