**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **PARKER MEYER,** | **CASE NO. 2:19-cv-00640-DCN** |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| **JEFFREY ANDERSON AND JEFF ANDERSON & ASSOCIATES, P.A.,** | |
| **Defendants.** | |

Jeff Anderson and Jeff Anderson & Associates, P.A. (collectively, "JAA") respectfully submit this Memorandum in Support of its Motion for Summary Judgment.

## INTRODUCTION

The present action by Plaintiff Parker Meyer is a professional negligence suit against JAA alleging violations of the duty of confidentiality. Plaintiff claims that JAA's alleged breaches of duty to Plaintiff lowered the value of Plaintiffs separate lawsuits against the City of North Charleston and the Charleston County Sheriff for unlawful arrest and detention under § 1983 (the "Underlying Cases"). Gregg Meyers represented Plaintiff in the Underlying Cases while employed by JAA and continued this representation after he left the firm. The Underlying Cases resulted in settlements ███████████████, each of which the Plaintiff approved in 2019. Apparently, Plaintiff is now unhappy with the settlements to which she voluntarily agreed and—without any evidence—claims that JAA is responsible for lowering the settlement amounts.

The supposed breaches of duty at the heart of Plaintiff's case arose from JAA's investigation that JAA completed into Mr. Meyers while the Underlying Cases were pending. Specifically, while Mr. Meyers was representing Plaintiff in the Underlying Cases, JAA received

a report that Mr. Meyers had inappropriate client boundaries with Plaintiff. JAA performed an investigation of Mr. Meyers pursuant to its ethical duty to supervise its associates under South Carolina Professional Rule of Conduct 5.1. As part of that investigation, JAA learned that Mr. Meyers had had inappropriate client boundaries with Plaintiff and had negligently handled other cases. JAA thus terminated Mr. Meyers in 2016. In an unemployment insurance proceeding brought by Mr. Meyers against JAA, as well as in a subsequent Minnesota state court proceeding between Mr. Meyers and JAA, JAA made statements referencing the investigation and Mr. Meyers's inappropriate conduct (the "Statements").

Notwithstanding the confidential and/or sealed nature of the Statements, Plaintiff asks this Court to believe that those Statements lowered the value of her Underlying Cases. She does so without pointing to any evidence to support her allegations. Because there is no evidence to support liability or damages as a result of the Statements, Plaintiff's claims fail as a matter of law.

As an initial matter, Plaintiff cannot show that JAA breached any duty of confidentiality. First, the Statements did not contain any confidential client information as defined by South Carolina Rule of Professional Conduct ("SCRPC") 1.6. Second, JAA had a right to defend itself in the unemployment hearing, and any statements it made fell within an exception to Rule 1.6 permitting a lawyer to disclose information relating to the representation of a client to establish a defense to a civil claim.

Similarly, Plaintiff has not and cannot show any evidence that the Statements affected the value of her Underlying Cases. First, there is no evidence that defense counsel in the Underlying Cases knew of the Statements. Plaintiff has consistently admitted that she has no evidence that defense counsel in the Underlying Cases had any communication with JAA or knowledge of the Statements. Moreover, defense counsel in the Underlying Cases testified in unrebutted affidavits

that they neither communicated with JAA nor had any knowledge of the Statements. Because defense counsel in the Underlying Cases had no knowledge of the Statements (nor could they), Plaintiff has no basis to claim that the Statements were or could have been used to affect the value of her Underlying Cases. Second, even if defense counsel in the Underlying Cases knew or could have known of the Statements (they did not), Plaintiff has not and cannot show that they would have been admitted into evidence in her Underlying Cases. Indeed, both Plaintiff's former attorney and her expert witness in this case each admit that the Statements regarding Mr. Meyers's having inappropriate client boundaries with her are irrelevant to Plaintiff's claims for unlawful arrest and detention. Moreover, the admission of this evidence in any civil proceeding would violate Minnesota law.

Finally, Plaintiff has no evidence to support a finding of damages. Plaintiff has offered no evidence, expert or otherwise, to demonstrate that she "most probably" would have received a larger settlement if JAA had not made the Statements. Indeed, Plaintiff has failed to provide any evidence of the value of her Underlying Cases. This alone is fatal to her claim. Accordingly, for these reasons and the reasons set forth below, the Court should grant JAA's Motion for Summary Judgment.

## **BACKGROUND**

### A.    **Plaintiff's Underlying Cases**

JAA initially represented Plaintiff in the Underlying Cases, two civil actions stemming from her arrest in Charleston, SC on March 27, 2014 (the "Underlying Cases"). *See Meyer v. Leigh Ann McGowan, et al.*, 2:16-cv-00777 (Gergel, J.); *Meyer v. Al Cannon, et al.*, 2:16-cv-00530 (Gergel, J.). Plaintiff engaged JAA on July 3, 2014. (*See* Fee Agreement, attached as **Exhibit 1**.) She brought her first case, *Meyer v. Leigh Ann McGowan, et al.*, as a § 1983 claim against the City

of North Charleston for unconstitutional warrantless search/entry stemming from her arrest.  Her second case, *Meyer v. Al Cannon, et al.*, was also a § 1983 claim against the Charleston County Sheriff for unconstitutional detention and retaliation arising from an allegedly unauthorized tasing while she was in jail.  Plaintiff's mother also brought a separate lawsuit related to this incident against the City of North Charleston.  *See Jane Doe 202 v. City of North Charleston*, et al., 2014-CP-10-04591; (Am. Compl. ¶ 45, ECF 19.) █████████████████████████

█████████████████████████████████████████████

█████████████████████    *Id.*  Gregg Meyers, who was employed at JAA at the time, was the primary attorney on the Underlying Cases and Plaintiff's mother's case.

**B.    Gregg Meyers's Termination**

In early June 2016, Mr. Anderson became concerned that Mr. Meyers did not have proper professional boundaries in his relationship with Plaintiff. (*See* Deposition of Jeff Anderson 11:18–12:9, attached as **Exhibit 2**.)  This concern arose when Mr. Meyers's assistant, Tammy Dochniak, reported to Mr. Anderson that Mr. Meyers was neglecting his other cases and spending too much time on Plaintiff's cases.  (*Id.*)

Under SCRPC Rule 5.1, a partner in a law firm has a duty to make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct.  *See* Rules of Professional Conduct Rule 5.1, RPC, Rule 407, SCACR.  If a lawyer with managerial authority in the law firm knows of conduct that may violate ethics rules and fails to mitigate it, the supervising lawyer himself is responsible for the other lawyer's violation of the Rules of Professional Conduct.  *See id.*

Consistent with this ethical duty, Mr. Anderson and his office manager, Carla Kjellberg, conducted an internal investigation which revealed that Mr. Meyers had ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ (*See* Memo from Carla

Kjellberg, attached as **Exhibit 3**; Unemployment Hearing Tr. pp. 10-11, attached as **Exhibit 4**.)

The investigation also revealed over two thousand emails between Mr. Meyers and Plaintiff

over the course of his representation, as well as emails with Plaintiff through a personal G-mail

account instead of Mr. Meyers's work-issued email account. (*See* Ex. 2, Deposition of Jeff

Anderson at 13:14–14:3.)  Many of these emails exhibited improper professional boundaries, for

example:

> **Gregg Meyers:** ████████████████████████████████
> ██████████████████ (10/16/2015 Email, attached as **Exhibit 5**);
>
> **Gregg Meyers:** ████████████████████████████████
> ████████ (3/25/2016 Email, attached as **Exhibit 6**);
>
> **Gregg Meyers:** ████████████████████████████████
> (11/29/2014 Email, attached as **Exhibit 7**.)

████████████████████████████████████████████████████████

████████████████████████████ (*See* Ex. 3, Memo from Carla Kjellberg at

p. 1.) Mr. Anderson later testified that ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ JAA terminated Mr. Meyers on October 1, 2016. (*See* Ex.

4, Unemployment Hearing Tr. at p. 5.)

## C.    Events Following Gregg Meyers's Termination

Following his termination, Mr. Meyers ████████████████████████. (*See*

Ex. 4, Unemployment Hearing Tr. at p. 2.)  Initially, Mr. Meyers's ████████████████

████████████████ (*Id.*)  Mr. Meyers appealed, and an unemployment hearing was held on

5

November 30, 2016.  (*See id.*)  During this hearing, Mr. Anderson ████████████████████ ████████████████████████████████████████████████████████ (*See id.* at p. 6.)  He stated ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████  (*See id.* at p. 10.)  According to the applicable Minnesota statute, the unemployment hearing was "absolutely privileged and [could] not be made the subject matter or the basis for any civil proceeding, administrative, or judicial."  *See* Minn. Stat. § 268.19, Subd. 2(c).  Only parties to the hearing could request an audio recording, and there was no transcript available anywhere until counsel in this present case transcribed the recording Mr. Meyers requested as a party to the unemployment proceeding.

In March 2017, Mr. Anderson sued Mr. Meyers to recover legal fees under the agreement reached with Mr. Meyers when he separated from JAA.  (*See Anderson v. Meyers* Civ. Cover Sheet, attached as **Exhibit 8**.)  In this lawsuit, Mr. Anderson filed an Affidavit detailing his reasons for terminating Mr. Meyers and other background information concerning the fee split.  (*See* Aff. of Jeffrey R. Anderson, attached as **Exhibit 9**.)  In one exhibit attached to the Affidavit—a four-page letter included among a hundred and thirty-eight pages of exhibits—he stated that ██████ ████████████████████████████████████████████████████████ (*Id.*) This Affidavit and the accompanying exhibits were filed under seal in Minnesota and remained under seal for the duration of Plaintiff's Underlying Cases. (*See* Filing Details Form, attached as **Exhibit 10**; Order Designating Doc. as Confidential p. 1, attached as **Exhibit 11**.)

**D.    Trial of Plaintiff's Mother's Case (2014-CP-10-04591)**

Plaintiff's mother's case was tried in front of a jury in Charleston County in October 2017. (*See* Am. Compl. ¶ 51, ECF 19.)  During trial, defense counsel asked two sets of questions on

cross examination which suggested an inappropriate relationship between Mr. Meyers and Plaintiff, without objection from Mr. Meyers, Plaintiff's mother's counsel. (*Id*.; Dep. of Gregg Meyers 115:14–116:14, attached as **Exhibit 12**.) First, defense counsel asked Plaintiff about deposition testimony she gave in the case on February 19, 2016. (*See* Trial Tr. 190:2–193:20, attached as **Exhibit 13**.) During this deposition, Plaintiff was asked about a romantic relationship with a neighbor, and she responded by saying that counsel "shouldn't get into those suggestions" or "Gregg [Meyers] would hit the roof." (*See* 2/19/2016 Dep. of Parker Meyer 420:18–421:1, attached as **Exhibit 14**.) Defense counsel also asked Plaintiff during trial, without objection, about cell phone records she produced in that case for her deposition that reflected a large number of phone calls between her and Mr. Meyers. (*See* Trial Tr. at 181:9–184:3.) The trial resulted in a defense verdict on October 13, 2017. (*See* Form 4 Jury Verdict Order, attached as **Exhibit 15**.)

**E.    Email Exchange Between Plaintiff and Mr. Anderson**

On December 7, 2017, Plaintiff emailed Mr. Anderson and asked a series of questions ████████████████████████████████████████████████████████████ (*See* Email Exchange Between Plaintiff and Mr. Anderson, attached as **Exhibit 16**.) Mr. Anderson replied on December 19, 2017, ████████████████████████████ ████████████████████████████████████████████████████ ████████ (*Id*.) Plaintiff responded on December 21, 2017, stating, ████████ ████████████████████████████████████████████████████ ████████████████████████████ (*Id*.) Plaintiff further said, ████████

███████████████████████████████████████████████████████████

████████████████████████ (*Id.*)  Mr. Anderson did not respond to this email.

## F.     Plaintiff Testified that Mr. Meyers Lived in Her House Six Months Before She Settled Her Underlying Cases

In Plaintiff's case related to her § 1983 claims against the Sheriff, Plaintiff was asked in a deposition on July 18, 2018 whether she lived alone. (*See* 7/18/2018 Dep. of Parker Meyer 18:9– 19:1, attached as **Exhibit 17**.)  Plaintiff answered affirmatively, but Mr. Meyers corrected her on the record, saying he had had a room at her house for the past year and a half:

| | |
|---|---|
| Q: | Okay.  Is anyone living with you currently? |
| A: | No. |
| Q: | Okay. |
| MR. MEYERS: | Wait a minute. |
| THE WITNESS: | Oh. |
| MR. MEYERS: | What was the answer to that question? |
| THE WITNESS: | Nobody lives with me. |
| MR. MEYERS: | I – I --. |
| THE WITNESS: | Well, I put my lawyer up when he's in town; but he cycles in and out. |
| MR. MEYERS: | Yeah. I'm not a permanent resident, but I rent—have a room there. |

(*Id.*). Mr. Meyers confirmed this in his deposition.

Q:     Well, let me ask it this way, Mr. Meyers: For a year and a half, when you were in Charleston, did you stay in a room in the same house that Parker Meyer lived in?

A:     Most of the time.

(*see* Ex. 12, Dep. of Gregg Meyers at 101:23–102:2.)

About six months after Mr. Meyers put this on the record, Plaintiff settled both Underlying Cases.  Her case against the Sheriff settled on █████████████████████ (*See* 1/17/2019 Settlement Statement, attached as **Exhibit 18**.)  Plaintiff settled her case against the City of Charleston on ██████████████████ (*See* 2/16/2019 Settlement Statement, attached as **Exhibit 19**.)

### G.    This Lawsuit

Plaintiff filed her original complaint on March 5, 2019. (*See* Compl., ECF 1.)  Plaintiff filed an Amended Complaint on May 28, 2019, adding two claims. (*See* Am. Compl., ECF 19.) On June 11, 2019, JAA filed a Motion to Dismiss Plaintiff's Amended Complaint and a Motion to Strike various irrelevant and immaterial paragraphs from the Amended Complaint. (*See* Mot. to Dismiss, ECF 22; Mot. to Strike, ECF 21.)  This Court held a hearing on August 19, 2019 on both motions, denied the Motion to Dismiss, and granted the Motion to Strike as to paragraphs 9-31 of the Amended Complaint because Plaintiff's allegations about JAA's caseload, obligations to other clients, and JAA's fee claims were irrelevant to Plaintiff's claims. (*See* Min. Entry Granting Mot. to Strike and Den. Mot. to Dismiss, ECF 30.) In her Amended Complaint, Plaintiff alleges that Mr. Anderson breached the duty of confidentiality and loyalty to her and is liable for professional negligence. (*Id.*) Plaintiff has asserted six causes of action against JAA: (1) breach of fiduciary duty, (2) breach of assumed duty, (3) aiding and abetting breach of fiduciary duty, (4) professional negligence, (5) breach of contract, and (6) breach of contract accompanied by a fraudulent act. (*Id.*) The basis for all of Plaintiff's claims is the same: JAA's Statements regarding Plaintiff's relationship with Mr. Meyers diminished the settlement value of her Underlying Cases. (*Id.*)

### LEGAL STANDARD

This Court should enter summary judgment when no genuine issue of material fact exists and JAA, as the moving party, is entitled to a judgment as a matter of law.  FRCP 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine*

issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (emphasis in original).

To discharge her burden, Plaintiff cannot draw inferences from "bald assertions [from her] pleadings. . .." *Long v. Chesapeake & Ohio Ry. Co.*, 825 F.2d 407 (table), No. 87-1540, 1987 WL 38247 at *2 (4th Cir. 1987). Plaintiff likewise cannot raise issues of material fact through mere speculation, *see Cox v. Cty. of Prince William*, 249 F.3d 295, 299 (4th Cir.2001), or from conclusions asserted without personal knowledge in affidavits or deposition testimony. *McClam v. Lake City Fitness Ctr.*, C.A. No. 4:13–3316–BHH, 2015 WL 5554577, at *8 (D.S.C. Sept. 21, 2015), aff'd, 635 F. App'x 137 (4th Cir. 2016). "Summary judgment is not a disfavored procedural shortcut, but an important mechanism for weeding out claims [having] no factual bases." *Moore v. Brown*, No. 99-6732, 215 F.3d 1320 (table), 2000 WL 691436, at *4 (4th Cir.2000).

## ARGUMENT

Plaintiff claims that JAA's Statements regarding her relationship with Mr. Meyers reduced the settlement value of her Underlying Cases, but there is no evidence to support this claim as to liability or damages. Plaintiff has no evidence that Mr. Anderson breached any duty owed to her, no evidence that any alleged breach caused her injury in her Underlying Cases (or otherwise), and no evidence of any damage or diminution in the value of her Underlying Cases. *See RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 331, 732 S.E.2d 166, 170 (2012) (finding that for a legal malpractice/professional negligence claim, a plaintiff must establish: "(1) the existence of an attorney-client relationship, (2) a breach of duty by the attorney, (3) damage to the client, and (4) proximate causation of the client's damages by the breach."). As a result, there is no genuine issue of material fact to submit to a jury as to Plaintiff's claims.

10

I.     **JAA Did Not Breach the Duty of Confidentiality to Plaintiff**

Plaintiff claims that Mr. Anderson breached his duty of confidentiality to Plaintiff on two

occasions: (1) his statements during the confidential Minnesota unemployment hearing referring

to ████████████████████████████████████ (*See* Ex. 4, Unemployment

Hearing Tr. at p. 8), and (2) his statement in an affidavit filed in a Minnesota state case that

referenced ████████████████████████████████████████████████

(*See* Ex. 9, Aff. of Jeffrey R. Anderson; Dep. of Parker Meyer at 16:5–16, attached as **Exhibit 20**;

Dep. of Michael Virzi 21:7–24, attached as **Exhibit 21**.)

This argument fails for two reasons. First, JAA did not reveal any confidential information

at the unemployment hearing or in the affidavit filed in the Minnesota state court proceeding as

defined by SCRPC Rule 1.6. Second, even if the Statements were confidential under Rule 1.6,

JAA had a right to defend itself in the unemployment hearing, and statements made in its defense

fall within Rule 1.6(b)(6), an exception to the rule. *See* Restatement (Third) of the Law Governing

Lawyers § 64 illustration 4.

A.     JAA did not reveal any confidential information

JAA's Statements did not contain confidential information as defined by Rule 1.6. *See*

Rules of Professional Conduct: Rule 1.6(a), RPC, Rule 407, SCACR ("A lawyer shall not reveal

information relating to the representation of a client unless the client gives informed consent, the

disclosure is impliedly authorized in order to carry out the representation or the disclosure is

permitted by paragraph (b)."). "Confidential client information" under Rule 1.6 does not include

information that is generally known. *See* Restatement (Third) of the Law Governing Lawyers §

59 cmt. D (2000) ("Confidential client information does not include information that is generally

known"); *In re Grand Jury Subpoena*, 204 F.3d 516, 520 (4th Cir. 2000) (reinforcing the

longstanding rule that "... a client's identity is privileged only if disclosure would in essence reveal a confidential communication."). Thus, a client's identity alone is not confidential under Rule 1.6.

In the Minnesota unemployment hearing, ████████████████████████ ███████████████████████████████████████████████████ (*See* Ex. 4, Unemployment Hearing Tr. p. 8.) Similarly, in the Minnesota state court affidavit filed under seal, Mr. Anderson simply referred to ████████████████████████ ████████ (*See* Ex. 9, Aff. of Jeffrey R. Anderson.) Even if the Statements did reveal Plaintiff's identity, this is not confidential information under Rule 1.6.

Additionally, Rule 1.6 states that a lawyer "shall not reveal information **relating to the representation of a client**…" *See* Rules of Professional Conduct: Rule 1.6, RPC, Rule 407, SCACR (emphasis added). JAA did not make any statement in either the unemployment hearing or the Minnesota state court affidavit that revealed "information relating to the representation of a client." It did not reveal personal information or legal information about Plaintiff's cases, but instead cited a concern—one Mr. Anderson was ethically required to investigate under Rule 5.1— regarding a lawyer's behavior. This is not what Rule 1.6 was designed to protect. *See* Rules of Professional Conduct: Rule 1.6, RPC, Rule 407, SCACR eds. note 2 (explaining that the purpose of Rule 1.6 is to establish trust in the client-lawyer relationship and "allow full and frank communication as to embarrassing or legally damaging subject matter"). Thus, JAA's Statements referencing Plaintiff did not reveal "confidential information" about Plaintiff and thus did not constitute a breach of its duty of confidentiality.

B.     JAA properly defended itself in the unemployment hearing as permitted under SCRPC Rule 1.6(b)(6).

Even if the Statements were confidential, JAA had a right to defend itself in the unemployment hearing against claims made by Mr. Meyers because the statements made in its

defense fall within an exception to Rule 1.6. A lawyer may reveal information relating to the representation of a client "to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and client, **to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved**, or to respond to allegations in any proceeding concerning the lawyer's representation of the client." *See* Rules of Professional Conduct: Rule 1.6, RPC, Rule 407, SCACR (emphasis added).

Here, Mr. Meyers initiated claims for unemployment benefits, and JAA defended itself in the hearing by generally discussing the client matters that led to Mr. Meyers's termination. Under Rule 1.6, a law firm may employ confidential client information to support its defense. An illustration of this appears in the professional ethics restatement in a nearly identical situation as the one present here under Rule 1.6(b)(6):

> "Lawyer is discharged by Law Firm and files suits against it, alleging damages for wrongful discharge. Law Firm defends on the ground that Lawyer's work was incompetent. Law Firm may, to the extent reasonably necessary, employ confidential client information to support its defense of incompetence in defending against Lawyer's claim. Lawyer may, to the extent reasonably necessary, also employ confidential client information to respond to Law Firm's charges of incompetence."

*See* Restatement (Third) of the Law Governing Lawyers § 64 illustration 4. Similarly, Mr. Meyers alleged damages for wrongful discharge in the unemployment hearing he initiated. Under Rule 1.6, JAA was entitled to use confidential information to support its defense against Mr. Meyers's claims.

Accordingly, JAA did not breach the duty of confidentiality to Plaintiff because JAA's Statements about Plaintiff did not contain confidential information under Rule 1.6 and were made pursuant to JAA's right to defend itself under Rule 1.6(b)(6).

## II.    There is No Evidence that the Statements Affected the Settlement Value of the Underlying Cases

Plaintiff has provided no evidence that any statements by JAA caused the settlement value of her Underlying Cases to decrease.  Plaintiff's argument appears to be as follows: because of certain questions defense counsel asked about her relationship with Mr. Meyers during her mother's trial, Plaintiff feared that defense counsel in her Underlying Cases knew of JAA's Statements and would use them against her in her own trials.  She claims that this fear induced her to settle her cases for less than their value. (*See* Ex. 20, Dep. of Parker Meyer at 113:3-7.) Mere possibility of damages is not enough to establish liability. *See Sapp v. Ford Motor Co.*, 386 S.C. 143, 149, 687 S.E.2d 47, 50 (2009) ("[W]e, too, are cautious in permitting negligence actions where there is neither personal injury nor property damage.  **Imposing liability merely for the creation of risk when there are no actual damages** drastically changes the fundamental elements of a tort action, **makes any amount of damages entirely speculative**…") (emphasis added). Instead, to establish liability, Plaintiff must show that defense counsel in the Underlying Cases knew of the Statements made by JAA, that this information would have been used against her in trial of these cases, and that it decreased the value of her cases.  Plaintiff cannot make this showing because (1) there is no evidence that defense counsel in the Underlying Cases knew of the Statements, and defense counsel could not have known of the Statements because the unemployment hearing was absolutely privileged and the Minnesota state court filing was filed under seal, (2) even if defense counsel knew of the Statements, there is no evidence that these statements would have been admitted in trial, and (3) Plaintiff's own testimony in her mother's

case was the only reason defense counsel questioned her relationship with Mr. Meyers, not because they had any knowledge of the Statements.

A.    There is no evidence that defense counsel in the Underlying Cases knew of JAA's Statements.

Plaintiff has consistently admitted that she has no evidence that defense counsel had any communication with Mr. Anderson or knowledge of JAA's Statements about Plaintiff's relationship with Mr. Meyers—either related to the confidential unemployment hearing or the under-seal affidavit:

> Q:    So we don't have any evidence of a writing between Jeff Anderson and his firm and underlying counsel or any proof to indicate a phone call; is that correct?
> A:    That's correct.

(*See* Ex. 20, Dep. of Parker Meyer 31:6–32:3.)  Mr. Meyers also testified to this:

> Q:    And there's no evidence or information you have that the defense lawyers in Parker Meyer's case ever saw a transcript of the unemployment hearing in Minnesota, correct?
> A:    No, nor was I worried about it.
> Q:    And there's no information or evidence that the defense lawyers in the underlying two cases, Parker Meyer's cases, ever had an audio recording of the hearing either, correct?
> A:    I would think that's a fair statement.

(*See* Ex. 12, Dep. of Gregg Meyers at 117:16–25; *see also* Pl.'s Amend. Resp. to Defs.' Req. for Admis. and Third Set of Req. for Prod. and Interrog. ¶ 11 ("Plaintiff admits that she does not have currently in her possession documents that evidence a direct contact between Defendant Anderson and the defense counsel in her underlying cases…").)  This dooms Plaintiff's claims for three reasons.

First, unrebutted evidence shows that defense counsel in the Underlying Cases did not have actual knowledge of JAA's Statements about Plaintiff's relationship with Mr. Meyers.  Both Mandi Dudgeon and Sandy Senn, defense counsel for Plaintiff's Underlying Cases and her mother's case,

respectively, have testified that they neither communicated with Mr. Anderson nor had any knowledge of JAA's Statements about Plaintiff's relationship with Mr. Meyers. (*See* Aff. of Sandra Senn, attached as **Exhibit 22**; Aff. of Amanda Dudgeon, attached as **Exhibit 23**.)  To the contrary, defense counsel state that they had no communication with Jeff Anderson during their defense of the Underlying Cases:

> "I did not have any communication of any kind with Jeff Anderson or any member of his firm during the time I defended the state actors in Rhonda Meyer's case, either during discovery or during trial." (Ex. 22, Aff. of Sandra Senn ¶ 4.)

> "I do not recall having any communication with Jeff Anderson or any member of his firm (other than Gregg Meyers) during the time I defended the Underlying Cases." (Ex. 23, Aff. of Amanda Dudgeon ¶ 5.)

Neither had any knowledge of the Minnesota state court action:

> "I have never reviewed any pleadings or attachment to pleadings in the Minnesota state court action *Jeff Anderson & Associates v. Gregg Meyers*, No. 62-CV-17-1647 (Minn. Dist. Ct.)." (Ex. 22, Aff. of Sandra Senn ¶ 9.)

> "I am not familiar with, nor do I recall ever reviewing any pleadings filed in the Minnesota state court action *Jeff Anderson & Associates v. Gregg Meyers*, No. 62-CV-17-1647 (Minn. Dist. Ct.)." (Ex. 23, Aff. of Amanda Dudgeon ¶ 10.)

Mandi Dudgeon, defense counsel for the Underlying Cases, also testified that she did not have any discussions with Jeff Anderson about valuation or settlement:

> "To the best of my knowledge, neither I nor anyone from my firm who represented the state actor defendants in the Underlying Cases had communications of any kind with Jeff Anderson or any member of his firm (other than Gregg Meyers) regarding settlement negotiations in the Underlying Cases."

> "To the best of my knowledge, neither I nor anyone from my firm who represented the state actor defendants in the Underlying Cases had communications of any kind with Jeff Anderson or any member of his firm (other than Gregg Meyers) regarding valuation of the Underlying Cases."

(*See* Ex. 23, Aff. of Amanda Dudgeon ¶¶ 6–7.)  Therefore, it is unrefuted that defense counsel in the Underlying Cases did not communicate with JAA or have any knowledge of the Statements.

Second, defense counsel in the Underlying Cases *could not* have known of JAA's Statements about Plaintiff's relationship with Mr. Meyers because (1) the Minnesota unemployment hearing was confidential and absolutely privileged; and (2) the Minnesota state court pleading was filed under seal for the duration of Plaintiff's Underlying Cases. Under Minn. Stat. § 268, all communications during Minnesota unemployment hearings are absolutely privileged and cannot be used as the basis for any civil proceeding, including the present action. (*See* Order Disqualifying Gregg Meyers pp. 8–9, ECF 76 ("This notice would certainly need to be established, as it is how plaintiff allegedly learned of defendants' alleged breach of fiduciary duties. However, the court fails to see how a recording of the hearing could be used to establish that fact, as Minnesota law prohibits the use of evidence from unemployment hearings in any civil proceeding. *See* Minn. Stat. § 268.19, Subd. 2(c); *id.* § 268.105, Subd. 5(b).").  Under this statute, the defense counsel in Plaintiff's Underlying Cases could not have had access to Mr. Meyers's unemployment hearing because it was absolutely privileged. *See* Minn. Stat. § 268.19, Subd. 2(c) ("Information obtained under the Minnesota Unemployment Insurance Law, in order to determine an applicant's entitlement to unemployment benefits, **are absolutely privileged and may not be made the subject matter or the basis for any civil proceeding**, administrative, or judicial."). Mr. Meyers has stated ██████████████████████████████████████ ████████████ (*See* Memo to Mr. Virzi p. 3, attached as **Exhibit 24**.)

Additionally, the affidavit in the Minnesota state court filing, in which Mr. Anderson referred to ████████████ was filed under seal. (*See* Ex. 10, Filing Details Form; Ex. 11, Order Designating Doc. as Confidential.) In March 2021, the Minnesota state court system launched its Minnesota Court Records Online system (MCRO), and the affidavits and exhibits originally filed under seal inadvertently became available online for a brief period of time. (*See* Ex. 11, Order

Designating Doc. as of Confidential p. 1.); MN Judicial Branch, *Minnesota Court Records Online Update*, GOVDELIVERY (Dec. 17, 2021), available at Inter Alia: Minnesota State Law Library Newsletter December 2021 (govdelivery.com) ("Phase 1 launched in March 2021 and for the first time allowed Minnesotans to access trial court documents online.").  As a practical matter, the affidavit Plaintiff claims defense counsel was able to access only became publicly available *after* Plaintiff had settled both of the Underlying Cases. (*Id*.)  Defense counsel in the Underlying Cases have confirmed in their affidavits that they had no knowledge of this case and did not rely on it when offering a settlement figure to Plaintiff. (Ex. 22, Aff. of Sandra Senn at ¶ 4; Ex. 23, Aff. of Amanda Dudgeon at ¶ 5.) Therefore, there is no genuine dispute of material fact as to whether defense counsel could have known of the statement made in Mr. Anderson's affidavit in the Minnesota state case.

  B.  <u>JAA's Statements could not have been used in her Underlying Cases.</u>

  Even if defense counsel in the Underlying Cases could have known of JAA's Statements, Plaintiff has not shown that these statements would have been admitted in her Underlying Cases. First, the Minnesota unemployment hearing was absolutely privileged.  Even if defense counsel had access to the audio recording of the hearing (which they testified they did not), they could not have used any communications from the hearing in the Underlying Cases pursuant to Minnesota statute already discussed. *See* Minn. Stat. § 268.19, Subd. 2(c).

  Second, JAA's Statements in the Minnesota state court filing also could not have been admitted in her Underlying Cases because they were filed under seal, as discussed above.  (*See* Ex. 10, Filing Details Form); (Ex. 11, Order Designating Doc. as Confidential.)

  Additionally, these statements cannot now be made the basis for *this* lawsuit.  South Carolina recognizes an absolute litigation privilege for statements made in court documents.  *See*

*Pond Place Partners, Inc. v. Poole*, 351 S.C. 1, 23, 567 S.E.2d 881, 892 (Ct. App. 2002). The litigation privilege covers "anything that may be said in relation to the matter at issue, whether it be in the pleadings, in affidavits, or in open court." *Id*. at 22, 892. This "well-recognized" rule exists as to "any utterance arising out of the judicial proceeding and having any reasonable relation to it." *See Crowell v. Herring*, 301 S.C. 424, 429, 392 S.E.2d 464, 467 (Ct. App. 1990). When a communication is "absolutely privileged, no action lies for its publication, no matter what the circumstances under which it is published." *See Pond Place Partners*, 351 S.C. at 22, 892 (quoting *Hainer v. American Med. Intern., Inc.*, 328 S.C. 128, 135, 492 S.E.2d 103, 106 (1997)). Plaintiff cannot now use any statement from the Minnesota state court proceeding as a basis for liability against JAA in *this* action.

C.   Plaintiff's own testimony and document production in her mother's case were the bases for questions regarding her relationship with Mr. Meyers in her mother's trial.

Defense counsel's references to Plaintiff's relationship with Mr. Meyers during her mother's trial were based on Plaintiff's own testimony, not JAA's Statements. Plaintiff was therefore the sole cause of any knowledge defense counsel had of her relationship with Mr. Meyers or any impact this knowledge could have had on the trial of either of the Underlying Cases. Plaintiff attempts to argue that somehow that defense counsel's references to her relationship with Mr. Meyers during her cross-examination in her mother's trial are evidence of the attorneys' knowledge of JAA's Statements. This is not true. Defense counsel's only two references during the mother's trial to Plaintiff's relationship with Mr. Meyers were based on: (1) Plaintiff's February 19, 2016 deposition testimony about Mr. Meyers when she testified that he would "hit the roof" regarding questions about her having a relationship with another man and the fact he lived at her house, and (2) phone records Plaintiff produced showing a large number of calls between herself and Mr. Meyers. (*See* Ex. 13, Trial Tr. at 181:9–184:3, 190:2–193:20; Ex. 14,

2/19/2016 Dep. of Parker Meyer at 420:18–421:1.)  Thus, defense counsel's cross examination questions about Plaintiff's relationship with Mr. Meyers were based solely on Plaintiff's own testimony and productions, not on any statements made by JAA.

Accordingly, there is no evidence that defense counsel in the Underlying Cases had any knowledge of the Statements made by JAA about Plaintiff's relationship with Mr. Meyers or that the Statements could have been used in the Underlying Cases.  Plaintiff's case is based on nothing more than speculation.  Plaintiff admits that she has no evidence that defense counsel in the Underlying Cases knew of JAA's Statements, but instead claims that defense counsel "could have known" about the Statements. (*See* Ex. 20, Dep. of Parker Meyer 94:4–10 ("…I had every reason to believe that Carla or someone in the office was obviously feeding this information that was exact parroting of Jeff Anderson's words to Sandy Senn.  I may not have the evidence of it but what really matters is that when I asked Jeff about it, he—instead of putting my mind at rest, he ghosted me….").)  Plaintiff's fears do not raise a genuine issue of material fact—they are only speculation and conjecture.  *See Harris Teeter, Inc. v. Moore & Van Allen, PLLC*, 390 S.C. 275, 299, 701 S.E.2d 742, 754 (2010) ("To survive summary judgment, the evidence presented must amount to more than mere speculation and conjecture.").

## III.    Even if There Were Any Evidence Supporting Liability, Plaintiff Cannot Prove Damages.

Plaintiff cannot prove damages to a reasonable degree of certainty, because she has offered no evidence to show that she "most probably" would have received a larger settlement, as required by South Carolina law to establish damages on these facts.  Plaintiff's failure to produce any evidence to support her damages claim is basis for this Court to grant summary judgment.

A.  <u>Plaintiff's claims are based on speculation</u>.

Under South Carolina law, a plaintiff "must plead and prove both the fact of damage and the amount of damage with a reasonable degree of certainty." *See S.C. Fed. Sav. Bank v. Thornton-Crosby Dev. Co.*, 296 S.C. 526, 528, 399 S.E.2d 8, 11 (Ct. App. 1990).  The estimation of damages cannot be based on conjecture or speculation.  *See Whisenant v. James Island Corp.*, 277 S.C. 10, 13, 281 S.E.2d 794, 796 (1981) ("Generally, in order for damages to be recoverable, the evidence should be such as to enable the court or jury to determine the amount thereof with reasonable certainty or accuracy…neither the existence, causation nor amount of damages can be left to conjecture, guess or speculation…."); *Gauld v. O'Shaugnessy Realty Co.*, 380 S.C. 548, 559, 671 S.E.2d 79, 85–86 (Ct. App. 2008) ("Neither the existence, causation, nor amount of damages can be left to conjecture, guess or speculation.") (quoting *Piggy Park Enters. v. Schofield*, 251 S.C. 385, 391, 162 S.E.2d 05, 708 (1968)).

To show damages and survive this motion, Plaintiff must provide evidence demonstrating that, if defense counsel in the Underlying Cases knew of the Statements, this information would have been admitted into evidence at trial in her Underlying Cases and that it would have affected a jury verdict.  Plaintiff has not and cannot do this.

First, Plaintiff has not put forward any evidence explaining why Mr. Meyers's alleged inappropriate client boundaries with Plaintiff was relevant to her § 1983 claims for unlawful arrest and detention.  In fact, Plaintiff's expert Michael Virzi testified that there is no relationship between the alleged inappropriate boundaries and Plaintiff's Underlying Cases:

> Q:             Okay.  So that's what I'm asking, Mr. Virzi. What is the relationship to those claims of whether or not there are inappropriate boundaries between Parker Meyer and Gregg Meyers?  It doesn't have anything to do with it.
> MR. JAMES:     Object to the form.

> THE WITNESS:    There is no relationship between alleged inappropriate boundaries and the claims underlying her 1983 action…

(*See* Ex. 21, Dep. of Michael Virzi at 56:3–5.) Mr. Meyers also testified that the alleged inappropriate boundaries were irrelevant to the claims in her Underlying Cases:

> Q:    Mr. Meyers, I'm having trouble seeing what the relevance of your relationship to Parker Meyer is in a warrantless entry Fourth Amendment case. What's the relevance of that?
>
> A:    I would say it's pretty irrelevant, Sam…

(*See* Ex. 12, Dep. of Gregg Meyers at 118:21–25.)

Second, as discussed above, Plaintiff has not presented any evidence that defense counsel in the Underlying Cases knew about any of the Statements by JAA and therefore that this information could have been admitted into evidence in her Underlying Cases. Instead, all evidence demonstrates that defense counsel in the Underlying Cases **did not** know about any of the Statements by JAA.

Third, Plaintiff has provided no evidence that even if JAA's Statements were admitted into evidence, it would have impacted the jury's verdict. This information is entirely irrelevant to the merits of a § 1983 claim. Plaintiff's expert Michael Virzi even testified that it would be "pure speculation" to suggest that if Plaintiff's § 1983 cases were tried, information about her relationship with Mr. Meyers would have affected the verdict. (*See* Ex. 21, Dep. of Michael Virzi 60:3–8.)

Accordingly, there is no evidence that irrelevant facts about Plaintiff's relationship with Mr. Meyers would have been admitted into evidence or relied upon by the jury if admitted. Based on a long, attenuated, and speculative line of reasoning, Plaintiff claims she was induced to settle over fear that the Statements would affect her Underlying Cases. (*See* Ex. 20, Dep. of Parker Meyer 61:21–62:9; 112:23–113:2.) Yet, Plaintiff cannot show a reasonable basis for her alleged fear that

the Statements would have affected the Underlying Cases in any way. Mere exposure to damages is not actionable, and Plaintiff cannot establish that the Statements would have affected the jury verdict and that she had a reasonable basis for settling her cases for an allegedly lower settlement value.

B. Plaintiff has not shown that she "most probably" would have received a larger settlement.

Under South Carolina law, a Plaintiff must prove that she "most probably would have received a larger settlement." *See Hall v. Fedor*, 349 S.C. 169, 561 S.E.2d 654 (Ct. App. 2002). There are two steps to proving damages in a professional negligence claim: (1) provide expert testimony showing the value of the underlying case, and (2) demonstrate that but for the alleged malpractice, the plaintiff would have received a larger amount of damages, or, stated differently, that the claimed malpractice diminished the value of the settlement. *Id*.

In *Hall v. Fedor*, for example, a former client brought a legal malpractice action against his attorney, alleging that because of his attorney's alleged malpractice, he settled his case for less than what it was worth. *See id*. The South Carolina Supreme Court affirmed the grant of summary judgment and held that plaintiff's claims failed because he did not establish that he "most probably" would have received a larger settlement but for the alleged malpractice. *Id*. at 176, 657. The court specifically found that because the expert witness testimony plaintiff attempted to offer as to value of his case was inadmissible hearsay, he could not meet the damages element of a legal malpractice claim—demonstrating that expert witness testimony is required to establish the "most probably" standard under South Carolina law. *Id*. at 175–76, 657.

Plaintiff has provided no evidence here—expert or otherwise— that she "most probably" would have received a larger settlement had JAA not made confidential statements about Mr. Meyers's inappropriate attorney-client boundaries. She has provided ***no evidence*** on the valuation

of her Underlying Cases; nor is there any evidence of the diminution in value of these cases. Neither Mr. Meyers nor Plaintiff's expert Michael Virzi has provided a valuation of these cases:

> Q:    Are you going to offer any testimony about the valuation of Parker Meyer's cases?
> A:    No.

(*See* Ex. 21, Dep. of Michael Virzi at 145:5–7.)

> Q:    Did you ever provide a written valuation of these two cases to Parker Meyer?
> A:    I don't think so. I don't typically do that, and I don't recall doing it with her.

 (*See* Ex. 12, Dep. of Gregg Meyers at 50:19–52:3**.**)

Absent evidence of valuation of Plaintiff's Underlying Cases and evidence that she most probably would have received a larger settlement, Plaintiff cannot establish damages as a matter of law.

## IV.    Plaintiff's Additional Causes of Action

In addition to her claim for professional negligence discussed above, Plaintiff also asserts various claims for Breach of Fiduciary Duty, Breach of Assumed Duty, Aiding and Abetting Breach of Fiduciary Duty, Breach of Contract, and Breach of Contract Accompanied by a Fraudulent Act. (*See* Am. Compl. ¶¶ 71–107; 112–120, ECF 19.) Plaintiff's basis for all of these additional claims is fundamentally the same, and effectively identical of the basis for Plaintiff's professional negligence claims.  This Court should grant summary judgment on each of Plaintiff's additional claims for the following reasons:

### A.  Breach of Fiduciary Duty.

Plaintiff's first cause of action alleges a claim for breach of fiduciary duty. (*See* Am. Compl. ¶¶ 72–85, ECF 19.) To establish a claim for breach of fiduciary duty, the plaintiff must prove: (1) the existence of a fiduciary duty, (2) a breach of that duty owed to the plaintiff by the defendant, and (3) damages proximately resulting from the wrongful conduct of the defendant. *See*

*RFT Management Co., L.L.C. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 331, 732 S.E.2d 166, 170 (2012). Plaintiff's breach of fiduciary duty claim is duplicative of her professional negligence claim under South Carolina law. *See id.* at 336–37. In *RFT Management*, the court held that the plaintiff's breach of fiduciary claim against its former attorney was "duplicative" of its legal malpractice claim because the plaintiff did not set forth any specific facts that "demonstrate its breach of fiduciary duty claim *is* distinguishable because it arises out of a duty *other than* one created by the attorney-client relationship or because it is based on different material facts." *See id.* (emphasis in original). As in *RFT Management*, Plaintiff's breach of fiduciary duty claim here arises from the same set of facts as her professional negligence claim. Under South Carolina law, this claim is duplicative of the professional negligence claim and should be dismissed for the same reasons.

      B. <u>Breach of Assumed Duty.</u>

Plaintiff's second cause of action is for "breach of assumed duty." (*See* Am. Compl. ¶¶ 86–101, ECF 19.) There is no evidence that such a cause of action has ever been accepted in South Carolina, but even if it were viable, Plaintiff has not shown that JAA breached any duty to Plaintiff for the same reasons discussed above. *See O'Leary v. TrustedID, Inc.*, No. 3:20-cv-02702-SAL, 2021 WL 4129202 *12 (D.S.C. 2021) (treating "breach[] of assumed duty" as a negligence cause of action and dismissing the Amended Complaint for failure to allege adequate damages); *Templeton v. Bishop of Charleston*, No. 2:18-cv-02003-DCN, 2021 WL 4129223 *6 (dismissing "breach of assumed duty" cause of action because the plaintiff failed to provide any argument or legal support that distinguished it from his negligence claims).

C.  Aiding and Abetting Breach of Fiduciary Duty.

Plaintiff's third cause of action for aiding and abetting breach of fiduciary duty fails because Plaintiff has not established that JAA breached a fiduciary duty. (*See* Am. Compl. ¶¶ 102–07, ECF 19.) The elements for a cause of action of aiding and abetting a breach of fiduciary duty are: (1) a breach of a fiduciary duty owed to the plaintiff; (2) the defendant's knowing participation in the breach; and (3) damages. *See Mason* v. *Mason*, 412 S.C. 28, 61, 770 S.E.2d 405, 422 (Ct. App. 2015).  As discussed above, Plaintiff cannot show that JAA breached a fiduciary or that damages proximately resulted from its alleged wrongful conduct.  Accordingly, Plaintiff's claim for aiding and abetting breach of fiduciary duty also fails.

D.  Breach of Contract.

Plaintiff's fifth cause of action alleges breach of contract. (*See* Am. Compl. ¶¶ 112–16, ECF.) To establish a breach of contract under South Carolina law, a plaintiff must establish three elements: (1) a binding contract entered into by the parties; (2) breach or unjustifiable failure to perform the contract; and (3) damage as a direct and proximate result of the breach. *See King v. Carolina First Bank*, 26 F. Supp. 3d 510, 517 (D.S.C. 2014) (applying South Carolina law). Plaintiff alleges here that JAA breached its contractual obligations to "comply with the applicable professional standards of care." (Am. Compl. ¶ 114, ECF 19.)   In her Amended Complaint, Plaintiff lists the alleged wrongful conduct that constitutes JAA's alleged failure to comply with professional standards of care, which is nearly identical to the conduct she alleges as the basis for her professional negligence and breach of fiduciary duty claims. (*Id*.)  As discussed above, Plaintiff

has not shown that JAA breached any professional standards of care nor that any alleged breach was the proximate cause of damages. Her claim for breach of contract on this basis therefore fails.

  E. <u>Breach of Contract Accompanied by a Fraudulent Act</u>

  Plaintiff's sixth cause of action for breach of contract accompanied by a fraudulent act fails because Plaintiff has not shown that JAA breached a contract. (*See* Am. Compl. ¶¶ 117–20, ECF 19.) In order to have a claim for breach of contract accompanied by a fraudulent act, the plaintiff must establish three elements: (1) breach of contract, (2) fraudulent intent relating to the breaching of the contract and not merely to its making, and (3) a fraudulent act accompanying the breach. *See Conner v. City of Forest Acres*, 348 S.C. 454, 465–66, 560 S.E.2d 606, 612 (2002). Plaintiff has not shown that JAA breached any of its contractual obligations, and thus her claim for breach of contract accompanied by a fraudulent act also fails.

## **<u>CONCLUSION</u>**

  For all of the above reasons, this Court should grant JAA's Motion for Summary Judgment and dismiss Plaintiff's claims in their entirety with prejudice.

       NELSON MULLINS RILEY & SCARBOROUGH LLP
       By: <u>s/Samuel W. Outten</u>
        Samuel W. Outten, Federal Bar No.: 2943
        Email: sam.outten@nelsonmullins.com
        2 W. Washington Street, Suite 400
        Greenville, SC 29601
        (864) 250-2300

        CIRESI CONLIN LLP
        Barry M. Landy (MN #391307), *Admitted pro hac vice*
        Email: bml@ciresiconlin.com
        225 South Sixth Street, Suite 4600
        Minneapolis, MN 55402
        (612) 361-8200

        *Attorneys for Jeffrey Anderson and Jeff Anderson & Associates, P.A.*

Greenville, South Carolina
June 15, 2022