# EXHIBIT 13

| STATE OF SOUTH CAROLINA | ) | THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHARLESTON | ) | DOCKET NO. 2014-CP-10-4591 |

```
                                   )
                                   )
                                   )
JANE DOE 202, through JOHN         )
DOE MM and JOHN DOE HS, each       )
of who holds Power of              )
Attorney for JANE DOE              )
                                   )
          Plaintiff                )
                                   )
          vs.                      )
                                   )
CITY OF NORTH CHARLESTON,          )
LEIGH ANNE MCGOWAN,                )
individually, CHARLES FRANCES      )
WHOLLEB, individually, and         )
ANTHONY M. DOXEY,                  )
individually                       )
                                   )
          Defendants               )
                                   )
_____    )     TRANSCRIPT OF RECORD
```

October 9, 2017
Charleston, South Carolina

**VOLUME 6 (of 10)**

B E F O R E:

    THE HONORABLE DEADRA L. JEFFERSON, JUDGE

A P P E A R A N C E S:

    GREGG E. MEYERS, ESQ.
    Attorney for the Plaintiff

    SANDRA J. SENN, ESQ.
    CHRISTOPHER T. DORSEL
    Attorneys for the Defendants



DEFENDANT'S EXHIBIT 7
PENGAD 800-631-6989
Meyer 2-1-22

JOYCE C. RUEGER, CVR-M
Circuit Court Reporter

JAA_001171

Jane Doe 202, et al v City of North Charleston, et al
Parker Meyer-Cross-Examination by Ms. Senn (resumes)
October 9, 2017

1  hearing in the A-1-A discipline unit and I just cried and

2  cried.   At one point I just cried for the rest of the

3  time at the jail.

4  Q.   I'm going to hand you what has already been

5  premarked and admitted as exhibit 35, your phone records.

6       MR. MEYERS:  I don't believe they have been admitted

7  into evidence.  We produced them for purposes of her

8  deposition.

9  Q.   [Ms. Senn] So Ms. Meyer, were you asked to produce

10  your phone records for the purposes of deposition?

11  A.   Yes ma'am, I was.

12  Q.   And you did that?

13  A.   Yes ma'am, I did.

14  Q.   But did you go out and black out any calls with your

15  lawyer, only your lawyer?

16  A.   At the time I had a lot of lawyers.  I was fighting

17  criminal charge.  And my criminal defense attorney

18  thought that I needed to meet with a civil rights

19  attorney.  So I had two lawyers.

20  Q.   Okay.

21  A.   And then I might have had another lawyer.

22  Q.   Okay.  So those are going to be redacted.

23  A.   Yes, ma'am.

24  Q.   So what I have here is May, June, July, August, and

25  September telephone calls.

JAA_001351

Jane Doe 202, et al v City of North Charleston, et al
Parker Meyer-Cross-Examination by Ms. Senn (resumes)
October 9, 2017

1    THE COURT:    Of what year, please?

2    MS. SENN:    It would have been '14.

3    THE COURT:    I just need that to be clear for the

4    record.

5    Q.    [Ms. Senn]  Ma'am, is it true that in, and I'll let

6    you take a look at these if you want, but it appears that

7    in June of 2014 you had 16 calls that you blacked out

8    indicating that it was related to counsel.

9    A.    Yes, ma'am.

10    Q.    7/14/14, so July 14, 2014, 59 calls related to

11    counsel.

12    A.    Okay.  Yes, ma'am.

13    Q.    8/14/2014, 125 calls that you have blacked out

14    claiming that you made 125 calls to lawyers ---

15    A.    --- that sounds like a really ---

16    MR. MEYERS:    --- could we approach, Your Honor ---

17    A.    --- it does sound like an awful high number of phone

18    calls for one month.

19    [Whereupon, an off the record bench conference is

20    held]

21    THE COURT:    Proceed.

22    Q.    [Ms. Senn] And on 9/14 ---

23    MR. MEYERS:    --- I would ask that she be given the

24    documents so she can -- it was two years ago.

25    Q.    [Ms. Senn]  In the month of September 14, 2014, 171

182

JAA_001352

Jane Doe 202, et al v City of North Charleston, et al
Parker Meyer-Cross-Examination by Ms. Senn (resumes)
October 9, 2017

1  phone calls with your lawyer.  That's more than 5.5 a

2  day.

3  A.   I called my lawyer.  You're saying I called my

4  lawyer five times a day one day?

5  Q.   No, more than five.  No, an average of 5.5 times a

6  day.

7  A.   Well, I was facing criminal and civil lawsuits and

8  so it did get a flurry of activity but then it settled

9  down.

10  Q.   Okay.  Now in ---

11  A.   --- did you have a question for me in there though?

12  Q.   I'm just asking you does that sound about right to

13  you that you spoke to your lawyer 5.5 times a day.

14  A.   Well, it was two lawyers and I did have PTSD but I

15  can't verify those numbers.  It sounds awfully high but

16  okay.

17  Q.   Who were you talking to the most?

18  A.   Well, I think at that time I was probably talking to

19  them evenly until the criminal charges were expunged.

20  Q.   Well those got expunged as soon as you entered anger

21  management and had to go through an eight week course,

22  right?

23  A.   Yes, ma'am. And that was either end of summer or

24  early fall of 2014.

25       MS. SENN:   Your Honor, we've already premarked this

183

Jane Doe 202, et al v City of North Charleston, et al
Parker Meyer-Cross-Examination by Ms. Senn (resumes)
October 9, 2017

```
1   and ---

2   A.    --- and also just because I dialed my attorney's

3   number doesn't means that they take my call.

4         MS. SENN:    I believe it was premarked as exhibit

5   17.

6         THE COURT:    Any exception?

7         MR. MEYERS:    No objection, Your Honor.

8         THE COURT:    Marked and admitted without objection.

9         [Whereupon, defendant's exhibit number 17 is entered

10  into evidence by the court]

11  Q.    [Ms. Senn] Okay.  So this is where you completed

12  your eight week program and you completed it on September

13  2, 2014.

14  A.    Yes, ma'am.  And then my criminal record wasn't

15  expunged until about another two weeks after that.  So it

16  was the end of September I guess.

17  Q.    Right.  But you had really needed to not communicate

18  with your criminal lawyer eight weeks prior because you'd

19  already made your deal.  You made your deal with the

20  prosecutor.  You enter anger management and then you go

21  there for eight weeks ---

22  A.    --- well, he had to make sure I completed anger

23  management and then I was -- in fact I'd call him to make

24  sure that I got my expungement order that I was promised

25  with the anger management classes.
```

184

JAA_001354

Jane Doe 202, et al v City of North Charleston, et al
Parker Meyer-Cross-Examination by Ms. Senn (resumes)
October 9, 2017

1   want him at the house.

2   Q.    Okay.   And I believe you were asked in deposition by

3   a different lawyer whether you were romantically involved

4   with Mr. McAllister [phonetic], is that right?

5   A.    I was in 2004.

6   Q.    Okay.

7   A.    It was about 15 years ago.

8   Q.    You didn't admit that in deposition.  I didn't ---

9   A.    --- I was not asked that.

10  Q.    Okay.  So you were involved with Mr. McAllister

11  [phonetic] in 2004?

12  A.    Yes.  I dated Charlie in 2004.

13  Q.    Okay.  But when asked whether you were romantically

14  involved in deposition did you indicate that no, you were

15  married?

16  A.    Yes.

17  Q.    And Gregg would hit the roof.

18  A.    I'm sorry?

19  Q.    Did you indicate in deposition no, you were married

20  and you were not dating anyone because Gregg would hit

21  the roof?

22  A.    What does that mean?

23  Q.    I don't know.  These are your words.

24  A.    Let me see it.

25  Q.    This is deposition 2.

190

Jane Doe 202, et al v City of North Charleston, et al
Parker Meyer-Cross-Examination by Ms. Senn (resumes)
October 9, 2017

1   A.    I don't think I have the depositions anymore.

2         [Whereupon, the witness is shown document]

3   A.    I'm sorry, what page did you say?

4   Q.    Page 420 starting at line 19, actually starting at

5   line 7.

6   A.    I see the conversation.  A handyman named Charlie

7   McAllister [phonetic], that conversation?

8   Q.    Yes.  And what I'd like to do if it is permissible

9   with Your Honor instead of me reading and her reading can

10  we just play the clip because we're just reading back and

11  forth.

12  A.    Let me read.  That's fine; I'm happy to read.  I've

13  got my glasses on.

14  Q.    But we'd like to play the clip.

15  A.    Okay.

16        MR. MEYERS:   May I approach, Your Honor.

17        [Whereupon, an off the record bench conference is

18  held]

19        THE COURT:   You may proceed.

20  Q.    [Ms. Senn]  All right.  The section that we need to

21  look at is ---

22        THE COURT:   --- point her to the exact page -- tell

23  her what page and the line number and ask the exact

24  question and give her the opportunity to admit or -- to

25  answer consistently or inconsistently and then you may

191

JAA_001361

Jane Doe 202, et al v City of North Charleston, et al
Parker Meyer-Cross-Examination by Ms. Senn (resumes)
October 9, 2017

1   read the answer.

2        MS. SENN:  Yes, ma'am.

3   Q.   [Ms. Senn] Page 420

4   A.   Yes, ma'am.

5   Q.   The question was am I close to Charlie McAllister

6   [phonetic].  Answer -- and I said yeah.  And then you

7   answered?

8   A.   Do you want me to read?  Are we doing a bit?  Are we

9   reading to each other or are you reading both parts; I'm

10  sorry.

11       THE COURT:   Ma'am, just read the answer.

12  Q.   [Ms. Senn]  Okay.  Line 7 I said all right are you

13  really close to Charlie McAllister [phonetic] and your

14  answer on line 9?

15  A.   My answer is am I close to Charlie McAllister

16  [phonetic]?

17  Q.   Question, yes.

18  A.   And then I say yes, we're good friends.

19  Q.   All right.

20  A.   I'm also good friends with his girlfriend of several

21  years and I'm good friends with both of them now and with

22  his parents.

23  Q.   Okay.  At this time were you dating?

24  A.   You said were you dating at the time.  I said no,

25  you know that's married.

JAA_001362

Jane Doe 202, et al v City of North Charleston, et al
Parker Meyer-Cross-Examination by Ms. Senn (resumes)
October 9, 2017

1   Q.    Oh, I'm sorry.

2   A.    I then I say yeah, you know that I'm been married.

3   My seven year anniversary is coming up on April 1st.

4   Q.    I'm sorry.

5   A.    So don't get into those suggestions or Gregg will

6   hit the roof.

7   Q.    Did that happen or not happen?

8   A.    What happened?  This conversation?

9   Q.    Yes.

10  A.    That's what we were just reading to them.

11  Q.    Okay.

12  A.    I'm confused.  It did happen so we're reading it.

13  Now what?

14  Q.    Okay.

15  A.    Did I answer a yes or no question?  Did it happen?

16  Yes, the conversation happened ---

17  Q.    --- I think ---

18        THE COURT:   --- ma'am, please don't engage in a

19  colloquy with Ms. Senn and Ms. Senn please don't get in a

20  colloquy with the witness.  Ask your next question.

21        MS. SENN:    Thank you.

22  Q.    [Ms. Senn] Now you've indicated that your husband

23  had not been financially supporting you but has Mr.

24  Meyers been financially supporting you?

25        MR. MEYERS:   Objection, Your Honor.

193

JAA_001363