**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| PARKER MEYER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:19-cv-00640-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| JEFFREY ANDERSON and JEFF | ) | |
| ANDERSON & ASSOCIATES, P.A., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The following matter is before the court on defendants Jeffrey Anderson's

("Anderson") and Jeff Anderson & Associates, P.A.'s ("JAA") (collectively,

"defendants") motion for summary judgment, ECF No. 104. For the reasons set forth

below, the court grants the motion for summary judgment.

## I.  BACKGROUND

This action arises from plaintiff Parker Meyer's ("plaintiff") allegations that

defendants breached their fiduciary duties to her by negatively affecting the settlement

value of her civil lawsuits in South Carolina. Plaintiff engaged defendants in 2014 to

provide legal services regarding certain matters in various South Carolina courts (the

"Underlying Cases"). The amended complaint, now the operative complaint, alleges that

this case is about defendants "choosing in multiple ways to promote their own financial

interests by actively damaging the plaintiff's interests, each of which ways independently

breached the defendants' fiduciary and professional duties to the plaintiff." ECF No. 19,

Amend. Compl. ¶ 8.

1

Plaintiff alleges that in the summer of 2016 defendants took advantage of a change in law that allowed them to file over 800 new cases in Minnesota. As such, Anderson allegedly "determined unilaterally" that he would terminate his clients in North and South Carolina, including plaintiff and her mother, due to JAA's increased workload in Minnesota. Id. ¶¶ 11–13. Plaintiff alleges that defendants violated the rules of ethics because they did not notify their North and South Carolina clients in writing about the terminations. Further, Gregg Meyers ("Meyers"), who previously worked for defendants, was only authorized by defendants to communicate with clients about their terminations by telephone. Plaintiff claims that Meyers attempted to "cover" this ethical omission by obtaining in writing an election from clients as to which lawyer they wanted to continue their representation with. Id. ¶ 24. Plaintiff was one of these clients, and she chose to be represented by Meyers in her Underlying Cases. While not explicitly alleged, it appears that this choice resulted from Meyers leaving JAA—clients could choose between staying with JAA or obtaining representation from Meyers.

At this point, there was no agreement between Meyers and defendants about how the fee would be allocated in plaintiff's cases. Plaintiff alleges that in November 2015, "defendants chose to advance what they imagined was their financial interest in the potential fee from the plaintiff's cases by attacking [Meyers] through a means which also attacked the plaintiff." Id. ¶ 32. Specifically, plaintiff alleges that at a public unemployment hearing on November 30, 2016, Anderson and his agent Carla Kjelberg testified under oath about "a substantial amount of false information, known to be false when advanced," including the claim that plaintiff had a sexual relationship with Meyers. Id. ¶ 34–36. The sole basis alleged for this allegation was the number of emails between

plaintiff and Meyers.  Id. ¶ 39.  Plaintiff further alleges that defendants also claimed that

they had two sources to support the information about the alleged inappropriate

relationship between plaintiff and Meyers.  Id. ¶ 43.  Plaintiff claims that defendants later

admitted to her that they had done no investigation into whether she actually had a sexual

relationship with Meyers.

This accusation allegedly arose again in March 2017 when defendants brought

suit against Meyers.  Plaintiff alleges that defendants initially did not reference the

accusation but that after a motion to dismiss was filed, defendants "alleged publicly in

writing in June 2017 that the plaintiff and Meyers had 'inappropriate boundaries.'"  Id.

¶ 48.  Consequently, plaintiff accuses defendants of falsely claiming that plaintiff and

Meyers were engaged in a sexual relationship at the 2016 hearing and again on the public

record in 2017.  The instant complaint alleges that during the trial of plaintiff's mother's

case,[1] in which plaintiff was a witness, the state actor defendants' lawyers argued that

plaintiff had an improper relationship with Meyers.  This was allegedly predicated on

plaintiff's telephone records.  Plaintiff does not know if this accusation was based on

defendants' accusation but argues that regardless, defendants' independent attack

bolstered the attack by the state actor defendants' lawyers.

After her mother's trial, plaintiff sought to understand defendants' alleged attack

so she could prepare for it at her own trials in the Underlying Cases.  Plaintiff asked

defendants about these accusations, and defendants denied promulgating them.  After

continued questioning from plaintiff, defendants allegedly stopped responding to her.

Plaintiff alleges that as a result, she was unable to accurately assess the risk of

---

[1] Plaintiff's mother was represented at trial by Meyers.

defendants' "damaging conduct" and prepare to offset that conduct, which forced her to settle her Underlying Cases for a lower amount than they were originally valued.  <u>Id.</u> ¶ 70.  In plaintiff's amended complaint, she brings claims for breach of fiduciary duty, breach of assumed duty, aiding and abetting breach of fiduciary duty, professional negligence, breach of contract, and breach of contract accompanied by a fraudulent act. <u>Id.</u>

On June 15, 2022, defendants filed a motion for summary judgment.  ECF No. 104.  Plaintiff responded in opposition on July 5, 2022, ECF No. 112, and defendants replied on July 14, 2022, ECF No. 118.  The court held a hearing on the motion on November 16, 2022.  ECF No. 122.  As such, this motion has been fully briefed and is now ripe for the court's review.

## II.  STANDARD

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986) (emphasis in original).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  <u>Id.</u> at 248.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the

4

nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III.  DISCUSSION

Defendants move for summary judgment based on plaintiff's failure to meet her burden of proof for all six causes of action: (1) professional negligence, (2) breach of fiduciary duty, (3) breach of assumed duty, (4) aiding and abetting breach of fiduciary duty, (5) breach of contract, and (6) breach of contract accompanied by a fraudulent act. ECF No. 104. Defendants primarily base this upon two key assertions: first, that plaintiff has failed to adequately establish a breach of duty; and second, that even if there were a breach, there is insufficient evidence to establish proximate causation or ascertainable damages. Id. All six causes of action have one or more element that requires plaintiff demonstrate breach of duty and/or proximate causation of ascertainable damages. Id.

As a preliminary matter, this court seriously doubts whether there is sufficient evidence to support any of plaintiffs' causes of action. If anything, it is possible that plaintiff has made a bare showing that defendants breached a duty to plaintiff. But there is certainly not a genuine dispute as to causation and damages. Plaintiff has failed to provide evidence to demonstrate that she was actually harmed, and that those damages can be fairly traced to the defendants' breach.

Given the absence of evidence to show damages or causation, the court grants the motion for summary judgment on all counts, which the court further explains below.

### A. Professional Negligence Claim

Under South Carolina law, the plaintiff must establish four elements to bring a professional negligence claim: (1) the existence of an attorney-client relationship; (2) breach of duty by the attorney; (3) damage to the client; and (4) proximate causation of client's damages by the breach. See RFT Mgmt. Co. v. Tinsley & Adams L.L.P., 732 S.E.2d 166, 170 (S.C. 2012).

For a case to survive summary judgment, the court must find (1) there exists valid disputes over material facts concerning whether defendants breached their fiduciary duties to plaintiff and (2) the damage can be quantified and causally traced to defendants' conduct. Plaintiff asserts that defendants breached their duty to her by breaching confidentiality and by refusing to release information to her and lying to her. ECF No. 112 at 38–39. Plaintiff references the elements of causation and damages but fails to adequately explain or support her assertion that but for defendants' actions she would have received a larger settlement in the Underlying Cases. Viewing plaintiff's facts in the light most favorable to her, a valid dispute exists over whether defendants breached their duties to plaintiff. But applying those same facts, the court does not find a genuine dispute as to whether but for defendants' actions, the Underlying Cases would have settled for larger sums (i.e., actual damages). Plaintiff provides nothing more than unsubstantiated allegations about the settlements' diminished valuation, and the alleged damages are not traceable to defendants' conduct towards plaintiff.

### 1. Breach of Duty by Attorney

Defendants indicate plaintiff has not shown that JAA breached any duty of confidentiality. ECF No. 104-1 at 11–12. Plaintiff alleges the following duties were

6

breached: failing to properly investigate before defendants published false and defamatory statements about plaintiff, lying to her and refusing to respond regarding the allegations, and failing to protect her identity with regards to the allegations. ECF No. 112 at 49. It does not appear that those are legally cognizable duties, and the court instead evaluates these allegations under two separate brackets that fall under the duties of an attorney to his client: (1) breach of fiduciary duty and (2) breach of client confidentiality.

### a. Breach of Fiduciary Duty

Before turning to the alleged breach of confidentiality, which drew the defendants' focus, the court addresses whether Anderson's refusal to answer plaintiff's attempts to communicate was a breach of fiduciary duties. See generally ECF 104-1. Whether defendants breached their fiduciary duty is subject to a genuine dispute of material fact. See Anderson, 477 U.S. at 247–48. A claim for a breach of fiduciary duty must prove (1) the existence of a fiduciary duty, (2) a breach of that duty owed to plaintiff by the defendants, and (3) damages proximately resulting from the wrongful conduct of the defendant. RFT Mgmt., 732 S.E.2d at 173. In South Carolina, an attorney owes his client fiduciary duties and he must render services with the degree of skill, care, knowledge, and judgment usually possessed and exercised by members of the profession. Spence v. Wingate, 716 S.E.2d 920, 927 (S.C. 2011); see also Harris Teeter, Inc. v. Moore & Van Allen, PLLC, 701 S.E.2d 742, 745 (S.C. 2010). In addition, fiduciary duties created by an attorney-client relationship may be breached even though the formal representation has ended. See Spence, 716 S.E.2d at 927. Parties in a fiduciary relationship must fully disclose to each other all known information that is significant and

material, and when this duty to disclose is triggered, silence may constitute fraud. <u>Ellie v. Miccichi</u>, 594 S.E.2d 485, 497 (S.C. 2004).

Plaintiff asserts that defendants' refusal to disclose to plaintiff information relevant to their attorney-client relationship is a breach of a fiduciary duty. ECF No. 112 at 10. Specifically, plaintiff asked Anderson for his two sources that had indicated a sexual relationship existed between plaintiff and Meyers, and rather than respond, Anderson remained silent. <u>Id.</u> at 38. Further, plaintiff asserts that Anderson's adversarial conduct, by first lying to plaintiff and then refusing to provide her with mitigating information, breached his fiduciary duties to her as his former client. <u>Id.</u> at 45. Under South Carolina law, defendants owed plaintiff a fiduciary duty since she was one of their former clients. Defendants dispute that they breached that duty, but viewing plaintiff's facts in the light most favorable to her, a reasonable juror could conclude that the scope of that duty was broad enough such that defendants' actions constituted a breach. Ultimately, whether Anderson's refusal to disclose his sources for the reported relationship breached that duty is a question of fact that a jury could find in favor of based on plaintiff's facts.

### b. Breach of Client Confidentiality

The breach of client confidentiality comprises a large part of the parties' briefs but has limited relevance. At issue is whether there exists a dispute as to whether the defendants, by referencing plaintiff in a separate action alleging sexual relations between her and her attorney, Meyers, breached the duty of confidentiality.

Interestingly, plaintiff simultaneously denies a sexual relationship with Meyers and alleges that defendants' testimony regarding that relationship was a breach of

confidentiality.  See ECF No. 112 at 23, 25, 40–41.  The court is perplexed as to how an

unrelated nonoccurrence is confidential under attorney-client privilege.  Since that

allegation was false, its revelation could not be a breach of a client's confidence.  See

Hall v. Fedor, 561 S.E.2d 654, 659 (S.C. Ct. App. 2002) ("[S]ince false information is

fabricated, not learned, the remedy for dissemination of such information is defamation,

not malpractice.").

 The claim could fit under a suit for defamation, slander, or libel, but plaintiff

chose to pursue it under professional negligence, saying "this case has not been brought

for libel or slander[,] [i]t has been brought because of the layers of different duties

breached as to Parker Meyer."  ECF No. 112 at 49.  Though plaintiff alleges the claim as

such, the court disagrees.  See Hall, 561 S.E.2d at 659.  However, since both parties

spend a significant portion of their briefs arguing over the validity of this claim, it is

worthwhile to examine it in some detail here.  The crux of the issue turns on whether a

public sexual innuendo about a former client is a breach of confidentiality, even if that

allegation is untrue.

 First, the court looks at what constitutes privileged or confidential

communications between an attorney and his client.  The Supreme Court of South

Carolina has highlighted the elements of the privilege as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal
> adviser in his capacity as such, (3) the communications relating to that
> purpose (4) made in confidence (5) by the client, (6) are at his instance
> permanently protected (7) from disclosure by himself or by the legal
> adviser, (8) except the protection be waived.

Tobaccoville USA v. McMaster, 692 S.E.2d 526, 529 (S.C. 2010).  It is unclear where an

allegation of sexual relations between a client and her attorney, a former employee of

defendants, falls under this umbrella of client confidentiality.  Traditionally, privileged

client information includes confidential communications relevant to a legal inquiry, not necessarily personal relationships wholly irrelevant to legal advice sought.  Under the South Carolina Rule of Professional Conduct ("SCRPC"), it is clear that "a lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph [1.6](b)."  SCRPC 1.6.  The confidentiality rule applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.  SCRPC 1.6 cmt. 3.

It is well established that the attorney-client "privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."  Upjohn Co. v. United States, 449 U.S. 383, 395 (1981).  In general, the party asserting the privilege must establish the confidential nature of the communication.  State v. Doster, 284 S.E.2d 218, 220 (S.C. 1981).  The burden is on the plaintiff to demonstrate that her identity as it relates to an allegation of a sexual relationship qualifies as a confidential communication protected by attorney-client privilege.  See Swinton Creek Nursery v. Edisto Farm Credit, 514 S.E.2d 126, 134 (S.C. 1999).  Plaintiff has not done that here.  See ECF 112; Amend. Compl.

Defendants' prior representation of plaintiff was in relation to § 1983 claims wholly unrelated to plaintiff's romantic relationships.  ECF No. 112 at 10.  In fact, the only aspect of that allegation related to defendants' prior representation of plaintiff was the fact that Meyers was a former employee of defendants.  Plaintiff concedes that the allegation could not have been admitted into evidence in the Underlying Cases since it

was irrelevant, but she nevertheless asserts harm by pointing towards the risk of the allegation coming in under cross-examination.  Id. at 38.  The alleged affair is therefore unrelated to the underlying lawsuit and not protected by client confidentiality.

Defendants assert that they did not breach the duty of confidentiality to plaintiff in their filings because they acted according to their ethical duty to supervise Meyers under SCRPC Rule 5.1.  ECF 104–1 at 1.  Moreover, JAA's statements were not confidential as defined by SCRPC 1.6.  Id.  Plaintiff argues defendants' allegation that their former attorney had sexual relations with his client, while releasing the identity of that married client, breached the firm's duty of confidentiality to that client (here, plaintiff).  ECF No. 112 at 43.  The court is inclined to agree with defendants on this issue—a former client's romantic relationships are outside the realm of information relevant to a § 1983 suit and therefore are not protected by attorney-client confidentiality.

Even if plaintiff's identity in relation to these allegations were confidential, defendants may have had a right to use such information in their defense in a civil lawsuit.  Defendants assert that JAA had a right to defend itself in the unemployment hearing under SCRPC Rule 1.6(b)(6).  ECF No. 104-1 at 1.  In practical terms, defendants assert that even if their statements breached confidentiality, their statements nevertheless fell within an exception to Rule 1.6, permitting a lawyer to disclose information relating to the representation of a client to establish a defense to a civil claim. Id. at 4.  Plaintiff, however, disputes this, saying that litigation privilege means only that defendants cannot be sued for libel or slander based on what is said or written in a courtroom but does not create a defense for breaching client confidences or breaching other duties such attorney-client fiduciary duties.  ECF No. 112 at 48–49.  Plaintiff

effectively argues that defendants could have taken steps to avoid disclosing plaintiff's identity in relation to the allegations of their former employee's sexual misconduct. Id. at 8–9. Regardless, this question is moot since plaintiff never disclosed any relationship to defendants, and even if she had, it was irrelevant to the legal advice she sought from the defendants and therefore was not confidential.

Consequently, the confidentiality question rests on whether false allegations of sexual misconduct between a former employee and former client fall under the umbrella of client confidentiality and privilege that defendants were required to respect. While plaintiff plausibly argues that JAA's allegations touched on confidential issues, the court finds that the communications were outside the sphere of confidentiality. Nevertheless, this issue is inconsequential since the court previously determined that there is a genuine issue of material fact over the second prong of the professional negligence claim based on whether there was a breach of fiduciary duty. As such, the court proceeds to analyze the issue of causation.

### 2. Proximate Cause

Defendants assert that plaintiff has no evidence that the settlements she received were affected by the alleged acts or omissions of JAA, nor does plaintiff have evidence that she "most probably" would have received a larger settlement but for defendants' alleged acts or omissions. ECF No. 104-1 at 2. Defendants correctly point to testimony from state actor defendants' attorneys in the Underlying Cases indicating that defense counsel neither communicated with JAA nor had any knowledge of the statements, demonstrating that the statements had no actual impact on the settlements in the Underlying Cases. ECF No. 104-1 at 2–3. Without an impact, there is no causation.

Professional negligence is not actionable unless it is a proximate cause of the injuries, and it is proximate cause only when without such negligence the injury would not have occurred or could have been avoided.  <u>Hanselmann v. McCardle</u>, 267 S.E.2d 531, 533 (S.C. 1980).  Proximate cause requires proof of (1) causation in fact and (2) legal cause.  <u>Bramlette v. Charter-Med.-Columbia</u>, 393 S.E.2d 914, 916 (S.C. 1990).  Causation in fact may be shown by establishing the plaintiff's injury would not have occurred "but for" the defendant's negligence, while legal cause is proved by establishing foreseeability.  <u>McKnight v. S.C. Dep't of Corr.</u>, 684 S.E.2d 566, 569 (S.C. Ct. App. 2009).  When the cause of a plaintiff's injury may be as reasonably attributed to an act for which the defendant is not liable as to one for which he is liable, the plaintiff has failed to carry the burden of establishing the defendant's conduct proximately caused her injuries.  <u>Id.</u>  Although proximate cause is ordinarily a jury question, the court may decide proximate cause as a matter of law when the evidence is susceptible to only one inference.  <u>Tuten v. Joel</u>, 763 S.E.2d 54, 61 (S.C. Ct. App. 2014); <u>Pope v. Heritage Cmtys., Inc.</u>, 717 S.E.2d 765, 771 (S.C. Ct. App. 2011).

Plaintiff's evidence of causal damages stems from her speculation that plaintiff lost her chance to testify in the Underlying Cases because the question of her relationship with Meyers would inevitably arise and fundamentally affect her credibility.  ECF No. 112 at 45.  That concern is unfounded for several reasons.  As explained above, the attorneys for plaintiff's party opponent in the Underlying Cases had no actual knowledge of the allegations, which plaintiff concedes.  <u>See</u> ECF No. 112 at 44.  But even if those attorneys had knowledge of the allegations, that knowledge would not have prevented her from testifying—she would have been given the opportunity to vehemently deny it under

oath and assert her side of the story, assuming that question were even allowed as relevant. Her failure to testify was plaintiff's choice; it was neither a decision made by her former attorneys at JAA nor an impossibility. See ECF No. 112 at 45. Consequently, plaintiff has not established a genuine issue of material fact regarding proximate causation.

### 3. Ascertainable Damages

Defendants also argue that plaintiff cannot prove damages, which fails to meet the standard of proof required for a professional negligence claim. ECF No. 104-1 at 10. Specifically, plaintiff cannot demonstrate that defendants "reduced the settlement value of the Underlying Cases." Id. In rebuttal, plaintiff argues that this case is not about a "reduced settlement value," but rather is focused upon an alleged change in settlement value of plaintiff's case after JAA's actions damaged plaintiff's reputation. ECF No. 112 at 40.

To prove damages, a plaintiff "must plead and prove both the fact of damage and the amount of damage with a reasonable degree of certainty." See S.C. Fed. Sav. Bank v. Thornton-Crosby Dev. Co., 399 S.E.2d 8, 11 (S.C. Ct. App. 1990). If the fact of damage is established, the law does not require the amount of damage to be proved with absolute mathematical certainty; damages may be recovered if there is evidence upon which a reasonable assessment of the loss can be made. Charles v. Texas Co., 18 S.E.2d 719, 729 (S.C. 1942); S.C. Fin. Corp. of Anderson v. W. Side Fin. Co., 113 S.E.2d 329, 337 (S.C. 1960). The estimation of damages cannot be based on conjecture or speculation but must rest on evidence from which a reasonably accurate conclusion regarding the amount of

loss can be logically and rationally drawn.  Gray v. S. Facilities, Inc., 183 S.E.2d 438, 444 (S.C. 1971).

To establish damages in a legal malpractice action in South Carolina, a plaintiff must prove that she "most probably would have received a larger settlement."  See Hall, 561 S.E.2d at 657.  In other words, plaintiff must provide expert testimony on the value of the underlying case and demonstrate that defendants' alleged malpractice diminished the value of that case.  See id.  Courts in South Carolina require expert testimony to show the value of an underlying case for damages purposes.  See, e.g., id.  A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  Boone v. Sunbelt Newspapers, Inc., 556 S.E.2d 732, 736 (S.C. Ct. App. 2001); Gauld v. O'Shaugnessy Realty Co., 671 S.E.2d 79, 85 (S.C. Ct. App. 2008).

The proffered evidence that defendants valued the case at $10 million and the affidavit from Meyers providing the "lost opportunity impact" on plaintiff's case do not rise to the threshold of evidence required to sustain the damages element in this cause of action.  ECF No. 118 at 3.  The closest plaintiff comes to establishing damages is her averment that she demanded much higher sums for two years than what she finally settled for in the Underlying Cases—but critically, no evidence has been presented showing that the defendants in those cases were ever willing to settle the case for more.  See ECF No. 112 at 40.  Plaintiff's expert, Michael Virzi, declined to provide a valuation of the Underlying Cases and testified he had never previously provided such a valuation.  ECF No. 104-1 at 23–24.  Plaintiff attempts to rectify this by submitting an affidavit written July 2022 in her response to defendants' motion for summary judgment.  ECF No. 112-7.

In it, Meyers alleges, "[b]efore [Anderson's] conduct [plaintiff] had a high probability of winning her cases and winning a large verdict (a verdict in excess of $5 million)." Id. ¶ 6.  Defendants are skeptical of this valuation because it contradicts Meyers's prior deposition testimony that he had not valued the cases.  ECF No. 118 at 5.  This skepticism is bolstered since the law heavily disfavors a party's creation of a genuine issue of material fact by producing its own contradictory testimony.  See Barwick v. Celotex Corp., 736 F.2d 946, 959–60 (4th Cir. 1984) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.").

Defendants are correct: plaintiff has failed to present any competent evidence by which a jury could determine the monetary value of her damage.  ECF No. 118 at 6. Plaintiff must demonstrate ascertainable damages.  While that does not need to be fixed with mathematical certainty at the summary judgment stage, some degree of evidence showing the estimate's possibility is required.  See Gray, 183 S.E.2d at 444.  Even viewing the facts in the light most favorable to plaintiff, that evidence does not exist.

Upon review, the court finds that the elements of damages and proximate causation are lacking, even when the evidence is viewed in the light most favorable to plaintiff.  Accordingly, the court grants summary judgment for defendants on plaintiff's professional negligence cause of action.

### B.     Breach of Fiduciary Duty

Defendants correctly allege the breach of fiduciary duty claim is duplicative of the professional negligence claim and would be merged under that cause of action under

16

South Carolina law.  See ECF No. 104-1 at 25.  To establish a claim for breach of fiduciary duty, plaintiff must prove: (1) the existence of a fiduciary duty; (2) a breach of that duty owed to the plaintiff by the defendants; and (3) damages proximately resulting from the wrongful conduct of the defendants.  See RFT Mgmt., 732 S.E.2d at 173.  If these elements appear to replicate those in the first prong of professional negligence, that is because they are identical.  Id.  If plaintiff does not set forth any specific facts to distinguish her breach of fiduciary duty claim from the professional negligence claim, then under South Carolina law, the claim is duplicative and may be merged into the professional negligence claim.  See id.  Examples that would indicate the claim is not duplicative are if the breach arose out of a duty other than one created by the attorney-client relationship or if the breach is based on different material facts.  Id.

A fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence—a relationship must be more than casual to equal a fiduciary relationship.  See Moore v. Moore, 599 S.E.2d 467, 472 (S.C. Ct. App. 2004) (citing Hendricks v. Clemson Univ., 578 S.E.2d 711, 715 (S.C. 2003)).  To establish the existence of a fiduciary relationship, the facts and circumstances must indicate the party reposing trust in another has some foundation for believing the one so entrusted will act not in his own behalf but in the interest of the party so reposing. Id.; see also Burwell v. S.C. Nat'l Bank, 340 S.E.2d 786, 790 (S.C. 1986).  The evidence must show the entrusted party actually accepted or induced the confidence placed in him. Id.  Whether a fiduciary relationship exists between two people is an equitable issue for the court to decide.  Hendricks, 578 S.E.2d at 715.

Plaintiff attempts to distinguish the breach of fiduciary duty claim from the professional negligence claim by asserting that the defendants had a duty to plaintiff arising not only from the fee agreement but also from a series of emails between plaintiff and Anderson in December 2017 wherein she asked him for his two sources alleging a relationship between plaintiff and Meyers.  ECF No. 112 at 8.  But plaintiff fails to explain what exactly in that correspondence should give rise to a fiduciary duty independent from the attorney-client relationship.  Id.

There are no additional duties at play beyond that of the attorney-client relationship, nor do the facts giving rise to the breach-of-fiduciary-duty cause of action differ from those underlying the professional negligence allegation.  Consequently, the defendants are correct: since plaintiff cannot meet the elements of professional negligence, she also cannot meet the burden of proof for breach of fiduciary duty, and the court grants summary judgment in defendants' favor on this cause of action.

### C.    Breach of Assumed Duty

Defendants reject plaintiff's claim of breach of assumed duty as invalid under South Carolina law but argue that even if the court accepted it as a valid cause of action, there was no breach of which to speak.  ECF No. 104-1 at 25.  The Supreme Court of South Carolina found an assumed duty when someone undertakes gratuitously or for consideration to render services to another which he should recognize as necessary for the protection of the other's person or things.  Wright v. PRG Real Est. Mgmt., Inc., 826 S.E.2d 285, 291 (S.C. 2019).  That person is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is

suffered because of the other's reliance upon the undertaking.  Id.  Wright is the only

legal authority plaintiff cites to for this cause of action.  See ECF No. 112 at 49–50.  That

case involved a landlord who offered to provide security to a tenant—which fell beyond a

standard landlord-tenant duty—but did so negligently.  Wright, 826 S.E.2d at 291.  The

cause of action clearly does not apply to the facts in this case because responding to a

client would fall under the standard duties in an attorney-client relationship.

First, plaintiff alleges the relevant breach of assumed duty is Anderson's

December 2017 response where he allegedly lied or failed to respond.  Specifically,

plaintiff alleges that defendants undertook a duty in choosing to respond and, having

undertaken a response, they owed a duty to respond truthfully.  ECF No. 112 at 30.

Plaintiff admits that this claim may be unnecessarily duplicative if her other causes of

action impose a duty on Anderson to respond to plaintiff and to respond truthfully when

she questioned him about the allegations of a sexual relationship.  ECF No. 112 at 50.

Finding the existence of an implied duty in this case would vastly expand the realm of

legal liability.  In that scenario, anyone who finds that another person has lied to him or

her could presumably enter the courts seeking to charge the lying party with a breach of

assumed duty.  This issue is more aptly considered under the professional negligence

claim.

Second, none of the other relevant elements of a breach of assumed duty claim are

met.  There was no physical harm to plaintiff's person nor has plaintiff adequately shown

economic harm or measurable damages.  Even if Anderson had lied, there was no

increased risk of harm, nor was plaintiff apt to rely upon such assertions because she

asked him questions that she already knew the answers to, having listened to the recorded

testimony.  ECF No. 104-1 at 30.  Consequently, there is no evidence to support plaintiff's allegation of breach of assumed duty, and the court grants summary judgment on this cause of action.

### D.    Aiding and Abetting Breach of Fiduciary Duty

Defendants assert that plaintiff cannot show that JAA breached a fiduciary duty or that damages proximately resulted from its alleged wrongful conduct.  ECF No. 104-1 at 26.  Under South Carolina law, the elements for a cause of action of aiding and abetting a breach of fiduciary duty are: (1) a breach of fiduciary duty owed to the plaintiff; (2) the defendant's knowing participation in the breach; and (3) damages.  See Bennett v. Carter, 807 S.E.2d 197, 200 (S.C. 2017).

Plaintiff argues this claim is adequately brought against the law firm JAA for aiding and abetting its principal, Anderson, in breaching a fiduciary duty towards plaintiff.  ECF No. 112 at 50.  For this claim to survive, plaintiff must provide evidence sufficient to genuinely dispute whether defendants breached their fiduciary duties to plaintiff, JAA knowingly participated in the breach, and damages resulted from that breach.  The source of the alleged breach is Anderson's December 2017 email where he allegedly lied to plaintiff and then went silent once she called out his lies, both of which are allegedly fraudulent acts that breached his fiduciary duties to plaintiff as a former client.  Id.

The court previously discussed the dispute over whether Anderson breached a fiduciary duty, supra III.B., as well as the uncertainty of actual damages, supra III.A.3.  As the court explained, viewed in the light most favorable to plaintiff, there may be sufficient evidence that would allow a reasonable trier of fact to find a breach of a

20

fiduciary duty.  But, there is insufficient evidence to find actual, measurable damages proximately caused by that breach.  On the damages prong alone, plaintiff's claim fails. The absence of any proximately caused damages stemming from a breach of fiduciary duty alone dooms plaintiff's claim for aiding and abetting a breach of fiduciary duty.

Unique to the elements of aiding and abetting breach of fiduciary duty is the requirement that plaintiff prove that JAA knowingly participated in the breach.  The essence of this claim is "the defendant's <u>knowing</u> participation in the fiduciary's breach." <u>Future Grp., II v. Nationsbank</u>, 478 S.E.2d 45, 99 (S.C. 1996), <u>overruled on different grounds by</u> <u>Paradis v. Charleston Cnty. Sch. Dist.</u>, 861 S.E.2d 774 (S.C. 2021) (emphasis added).  Defendants have not raised this defense, instead relying upon the assertion that no duty was breached and the damages are not ascertainable.  <u>See</u> ECF 104-1 at 26. Additionally, plaintiff has provided no evidence whatsoever of JAA's actual knowing participation in Anderson's alleged breach of fiduciary duty.  Consequently, plaintiff has failed to meet her burden of proof, and summary judgment on this cause of action is warranted in defendants' favor.

### E.     Breach of Contract

Defendants argue that plaintiff's support for her breach of contract claim is nearly identical to the conduct alleged for her professional negligence and breach of fiduciary duty claims.  ECF No. 104-1 at 26.  The court agrees, and for the same reasons as set forth above (<u>i.e.</u>, insufficient evidence of damages or proximate causation), the claim must fail.

To establish breach of contract under South Carolina law, a plaintiff must establish three elements: (1) a binding contract entered into by the parties; (2) breach or

unjustifiable failure to perform the contract; and (3) damage as a direct and proximate result of the breach. See King v. Carolina First Bank, 26 F. Supp. 3d 510, 517 (D.S.C. 2014) (applying South Carolina law). Damages recoverable for a breach of contract must either flow as a natural consequence of the breach or must have been reasonably within the parties' contemplation at the time of the contract. Hawkins v. Greenwood Dev. Corp., 493 S.E.2d 875, 880 (S.C. Ct. App. 1997); Morningstar Fellowship Church v. York Cnty., 2018 WL 2979771, at *1 (S.C. Ct. App. 2018). Under South Carolina law, to prevail on a breach of contract claim, the plaintiff bears the burden of establishing the three elements of a breach of contract claim. See Ferguson v. Waffle House, Inc., 18 F. Supp. 3d 705, 731 (D.S.C. 2014) (citing Fuller v. E. Fire & Cas. Ins. Co., 124 S.E.2d 602, 610 (S.C. 1962).

Both parties concede there was a binding contract entered into by the parties. ECF No. 104-1 at 10, 26–27. But defendants specifically reject plaintiff's allegation that defendant JAA breached its contractual obligations to "comply with the applicable professional standards of care." Id. (quoting Amend. Compl. ¶ 114). In rejecting that claim, defendants reiterate that plaintiff has not shown either a breach of a professional standard of care or that such a breach was the proximate cause of damages. Id. at 27. Plaintiff argues that defendants failed to comply with the applicable standards of care "by failing to assist her when she asked for information to mitigate the damage caused her, by giving her false information when they had a duty to be truthful, and then by going silent when she challenged them lying to her." ECF No. 112 at 7. The specific incident that plaintiff references is Anderson's refusal to respond to her December 2017 email. Id. at 51. This action allegedly breached the contractual obligation to "respond promptly to

22

inquiries and communications." Id.  Assuming that a refusal to reply could lead a jury to find defendants breached the requirement of responding promptly, the court moves onto proximate causation of damages.

Defendants are correct in stating plaintiff has failed to establish that any alleged breach proximately caused damages.  ECF No. 104-1 at 27.  The court would have to create a complicated chain of inferences to link Anderson's reply and/or silence to plaintiff's allegedly deflated settlement figure.  First, since Anderson's false statement and/or silence allegedly constituted the breach, plaintiff must argue that but for the breach, Anderson would have provided the names of the two sources who reported plaintiff's sexual relationship with Meyers.  Then, plaintiff must argue that she would have used those names to deny any claims about her sexual relationship with Meyers had the defense attorneys in the Underlying Cases discovered the rumored affair and sought to discredit her on cross-examination and that those two names would have been essential to her denial.  Third and finally, plaintiff must argue that had she gone to trial, the jury would have awarded her significantly more in damages as a result.  Suffice to say, this is a tenuous causal chain and wholly insufficient to demonstrate proximate cause, much less measurable damages.

For the above reasons, the court grants summary judgment on the breach of contract claim.

### F.     Breach of Contract Accompanied by a Fraudulent Act

To successfully bring a claim for breach of contract accompanied by a fraudulent act, the plaintiff must establish three elements: (1) breach of contract; (2) fraudulent intent relating to the breaching of the contract and not merely to its making; and (3) a

fraudulent act accompanying the breach.  See Conner v. City of Forest Acres, 560 S.E.2d 606, 612 (S.C. 2002).  Motive is relevant to the requisite element of fraudulent intent and is typically proven by circumstances surrounding the breach.  Edens v. Goodyear Tire & Rubber Co., 858 F.2d 198, 203 (4th Cir. 1988).  The fraudulent act is any act characterized by dishonesty in fact or unfair dealing.  Id.  The court must determine the existence of fraud considering the facts and peculiar circumstances present in the case.  In re Ducane Gas Grills, Inc., 320 B.R. 341, 355 (Bankr. D.S.C. 2004).

Defendants argue that plaintiff has not met her burden of proof to demonstrate that defendant JAA breached a contract, a necessary element of a breach of contract accompanied by a fraudulent act claim.  ECF No. 104-1 at 27.  Plaintiff, however, argues that Anderson breached the parties' contract by failing to respond.  As explained above, plaintiff has not met her burden of proof to establish the elements of proximate causation or damages for her breach of contract claim.  Without a valid breach of contract claim, plaintiff cannot successfully bring a breach of contract accompanied by fraudulent act claim.  Thus, the court grants summary judgment in defendants' favor on this count.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the defendants' motion for summary judgment.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**November 29, 2022**
**Charleston, South Carolina**